IN THE

## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-YORK,

IN MAY TERM, 1821, IN THE FORTY-FIFTH YEAR OF OUR
INDEPENDENCE.

---

### THE UTICA INSURANCE COMPANY *against* SCOTT.

THIS was an action of *assumpsit* against the defendant, as endorser of a promissory note for 800 dollars, dated June 26, 1818, made by *James M'Namara*, payable to *F. Stranahan*, or order, sixty days after date, at the office of the *Utica Insurance Company*, and endorsed by *Stranahan* to the defendant, who indorsed the same to the plaintiffs, &c. The defendant pleaded, that the plaintiffs ought not to have or maintain their action, &c. because, on the 1*st* of *September*, 1816, the plaintiffs, unauthorised by law, and contrary to the form of the act in such case made and provided, did subscribe to and become members of an association, institution, or company, and did become the proprietors of a bank or fund for the purpose of issuing notes, receiving deposits, making discounts, and transacting all other business which incorporated banks may and do transact, by virtue of their respective acts of incorporation; and that in pursuance of such unauthorized, illegal and corrupt intent, the plaintiffs, afterwards, &c.

*The Utica Insurance Company, not being authorized by law to become proprietors of any bank or fund, for the purpose of issuing notes, receiving deposits, making discounts, or transacting any other business, which incorporated banks may lawfully do, any note discounted by them, or security taken for money lent, &c. is void, within the meaning of the act (sess. 36. ch 71.) to restrain unincorporated banking associations. (2 N. R. L. 224.)*

at *Utica, &c.* established an office or banking house, and issued notes, received deposits, and made discounts," &c. and on the 26th of *June,* 1818, when the note above mentioned was made and endorsed for the benefit of the makers, and with the intent to have the same discounted by the plaintiffs, for his benefit, at the office or banking house of the plaintiffs, so illegally established at *Utica,* &c. That, afterwards, on the said 26th of *June,* 1818, the said *James M'Namara* presented the said note, so indorsed, to the plaintiffs, at their said office for discount, and the plaintiffs, then and there, accepted the said note, and discounted the same for the benefit of *M.* " By means whereof, and by force of the statute in such case made and provided, the said note, and the said endorsment so made thereon, by the defendant, were and are void, and of no force and effect in the law, &c. with a verification, &c. To this plea the plaintiffs replied, that by an act passed the 29th of *March,* 1816, the said *Utica Insurance Company* was constituted and declared to be, from the passing of the act until the first *Tuesday of July,* 1836, a body politic and corporate, &c. and that by virtue of the said act, they still continue a body politic and corporate, &c. That by the provisions of the said act, among other things, the Directors for the time being, were empowerd, among other things, to invest by loan, the funds of the corporation which the business of insurance might not actively employ ; and that the said *Utica Insurance Company* so having funds on hand which the business of insurance did not actively employ, did, on the said 26th of *June,* 1818, loan to the said *James M'Namara* a certain sum of money out of the funds of the said Company, and did, then and there, receive and accept from the said *M.* the said promissory note described in the first count of the plaintiffs declaration, and so endorsed, as aforesaid, as security for the money so loaned, as by the provisions of the said act they had a right to do ; *without this, that before* the making of the said note, &c. the said plaintiffs, unauthorized by law, and contrary to the form of the act in such case made and provided, did subscribe to and become members of an association, institution, or company, and proprietors of a bank or fund for the purpose

set forth in the said plea ; and this the said plaintiffs are ready to verify, wherefore they pray judgment, and their damages, &c.

The defendants demurred to the replication ; and assigned for causes of demurrer, that the plaintiffs, in their replication, have not confessed and avoided, traversed or denied, that the plaintiffs, as set forth in the first count of the declaration, did illegally and corruptly establish an office or banking house, and issue notes, receive deposits, and make discounts, &c. (as stated in the plea.)

*Talcot*, in support of the demurrer. The traverse in the replication is as to facts which, if found by a jury, would not put an end to the cause. It, also, puts in issue matters of law, and matters of fact. Besides, it should have denied that the plaintiffs did take and discount notes, *modo et forma*. (15 *Johns. Rep.* 358. 2 *N. R. L.* 284.)

*N. Williams*, contra. 1. The plaintiffs state the grounds on which they were authorized to take and discount notes, as inducement to the traverse. The only material fact in the plea which would lead to an issue is traversed. The replication admits or avoids, or denies every material fact ; and this is all that is required by the rules of good pleading. (1 *Chitty Pl.* 586. 595.) The plaintiffs are not technically estopped by the judgment on the information against them. (10 *Vin. Abr.* 446. *Co. Litt.* 352. *a.* 2 *Johns. Rep.* 382.)

2. The plaintiffs are not within the provisions of the restraining act of 1804, revised in 1813, (1 *N. R. L.* 234.) which is highly penal, and to be strictly construed. (1 *Bl. Comm.* 88, 89. *Doug.* 706.) That act included unincorporated associations only. The Court so decided in *Bristol* v. *Barker* ; (14 *Johns. Rep.* 206.) and in the case of *The People* v. *The Utica Insurance Co.* (15 *Johns. Rep.* 381.) they held that a corporation was not within the terms of the act. If so, then the plaintiffs are governed by the rule in *Barker's* case, in which the Court said, that the defendant being an *individual*, he did not come within the act ; and a corporation is a *person* in law. (2 *Johns. Rep.* 379. 1 *Mass. Rep.* 167.) The

NEW-YORK, intention of the act is to be discovered from the cause of
May, 1821 making it. In 1803, certain associations were formed in
UTICA INS Co. the City of *New-York*, to carry on banking business, with-
v.
SCOTT. out any charter of incorporation for that purpose ; and this
act was passed in 1804. The *title and preamble*, also,
show that the intent was to restrain such unincorporated
associations. (2 *Cranch*, 386. 400.) Corporations were
left to the restraints and provisions of their particular
charters. Seven days after the revision of the act in 1813,
" *The Flushing Manufacturing Company*," was incorpo-
rated with express restraints ; and the like restraints have
been inserted in almost every charter of incorporation since.
In the act of 1816, (sess. 39. c. 223.) the words *persons* and
*corporation* are introduced, but they were not used in the
restraining act of 1813, which shows that the legislature
knew what terms to employ to express their intent. Again, in
the act of 1818, (sess. 41. c. 236.) *persons and corporations*
are expressly restrained. But if they were included in the
former act of 1813, what occasion was there for any new
statute on the subject? That act, also, declares, that " it
shall not be lawful after *August*," &c. plainly implying, that
in the opinion of the legislature it was lawful before.

Again ; these acts are in derogation of common law
rights ; and this Court, therefore, in *M'Queen* v. *Middletown
Manufacturing Co.* (16 *Johns. Rep.* 7.) say, that in such a
case " the statute ought not to be carried further, by con-
struction, than the plain and manifest intention of the legis-
lature indicates." In construing the restraining clause. the
present Chief Justice, in the case of *The People* v. *The Utica
Insurance Co.* places the point on this strong ground. " The
offence prohibited," he says, " by this act, consists in sub-
scribing to, or becoming a member of, any association, or
proprietor of any bank or fund, unauthorised by law for
banking purposes. But if the subscribing to, or becoming
a member or co-proprietor of, any fund, is authorized by
law, then the issuing notes, receiving deposits, and making
discounts, is no violation of the act."

3. The decision in 15 *Johns. Rep.* 358. does not conclude
the plaintiffs in this case. The grounds of that decision
were, that, " The right of banking, since the restraining

act, had become a *franchise*, that can be exercised by those companies only who can show a grant from the legislature." The object was to prohibit certain acts, not to enforce penalties or forfeitures. Nothing is said in that case, indicating an opinion that the plaintiffs had incurred the penalties of the restraining act. It does not follow, that because the plaintiffs were prohibited from exercising banking powers, that they could not transact their other business, or do such things as any individual or person might lawfully do.

4. The charter of the plaintiffs confers powers wholly at variance with the notion that they are obnoxious to the penalties of the restraining act. The late Chief Justice, (15 *Johns. Rep.* 384.) said, " The surplus funds may, no doubt, be loaned at interest." " A bond or note given to the corporation on a loan of money, creates a debt due to them, and the payment may be secured by mortgage," &c. (*p.* 385.) Again, he says, (*p.* 386.) " The stockholders may vote to discontinue the business of the corporation, and in such case, the directors are required to call in their funds," &c. " But nothing further is implied or inferred from this authority or direction, than that the corporation may make loans, and have debts due to them." " They may have debts due to them for premiums and otherwise ; and it has been shown that they may, also, loan money." This was the opinion of the whole Court. If, then, the plaintiffs may loan money, and thus create debts, shall they not have the power to collect the debts due to them ? Does the act subject them to penalties or forfeitures, for exercising powers confessedly given to them ? The very note in question was taken for money loaned by the plaintiffs out of their surplus funds.

*Talcot.* in reply, said, that the decision in 15 *Johns. Rep.* 358. 394. settled the principle, that *incorporated* companies were within the restraining act. *Thompson,* Ch. J. in that case, says, " Although the restraining act does not, in terms, include incorporated companies, &c. yet the term ' persons' there used, will embrace incorporated companies in the prohibition." And when it is said that the

*Margin:* NEW-YORK, May, 1821. UTICA INS. Co. v. SCOTT.

NEW-YORK, plaintiffs may loan their surplus money, the position is
May, 1821. qualified by adding, that they cannot lend money for bank-
UTICA INS. Co. ing purposes. The plea alleges, that the loan on this note
v. was for banking purposes, and the plaintiffs should have
SCOTT. traversed that fact.

*Per Curiam.* The replication is bad, for the causes set
forth in the demurrer; it does not traverse or deny the
facts in the plea, nor does it introduce any new fact in
avoidance of the facts stated in the plea. (1 *Chitty Pl.*
587, &c.) This brings the case back to the plea. In the case
of *The People* v. *The Utica Ins. Co.* (15 *Johns. Rep.* 358.)
it was decided, that the act of incorporation did not autho-
rize the company to institute a bank, issue bills, discount
notes, and receive deposits; and that the company having
exercised those powers, had usurped the franchise of bank-
ing; and a judgment of ouster was accordingly rendered
against them. The restraining act, (2 *N. R. L.* 234. s. 2.)
declares, that all notes and securities for the payment of
money, or the delivery of property, made or given to any
such association, institution, or company, not authorized
as aforesaid, shall be null and void. The same statute de-
clared it to be unlawful for any person unauthorized by
law, to subscribe to or become a member of any associa-
tion, or proprietor of any bank or fund, for the purpose of
issuing notes, receiving deposits, making discounts, or
transacting any other business which incorporated banks
may or do transact, by virtue of their respective acts of
incorporation; and it inflicts a penalty of $1,000 for a
violation of the act. If the plaintiffs became proprietors
of a fund illegally, and in violation of the restraining act,
it follows inevitably, that all notes given to them, for the
purpose of being discounted, and actually discounted, in
contravention of the act, are null and void. That they
did become proprietors of a fund illegally and in violation
of the restraining act, has been solemnly decided in the case
referred to; and in that decision the plaintiffs have acquies-
ced. In analogy to the statute against gaming, the notes and
securities are absolutely void, into whatever hands they
may pass; but there is a material distinction between the

security and the contract of lending.    The lending money <span>NEW-YORK,</span> is not declared to be void, and therefore wherever mo- <span>May, 1821.</span> ney has been lent, it may be recovered, although the se- <span>MILLS</span> curity itself is void. (2 *Burr.* 1080. 2 *Str.* 1249. *Com. Rep.* <span>v.</span> <span>MARTIN.</span> 4. 2 *Str.* 1155. *Doug.* 736.) Here, the action is on the security; and as that is declared to be void, the plaintiffs cannot sustain their action.

Judgment for the defendant.