HUMPHREYS (UNITED STATES v.). See Case No. 15,422.

HUMPHREYS (WEBBER v.). See Case No. 17,326.

## Case No. 6,872.

### HUMPHREYVILLE COPPER CO. v. STERLING.

[Brunner, Col. Cas. 3; [1] 1 West. Law Month. 126.]

Circuit Court, N. D. Ohio. 1859.

CORPORATIONS—GENERAL POWERS—PRESUMPTION —CONSTRUCTION OF STATUTES—STATE LAWS IN OTHER STATES.

1. It is a well-settled principle, that a corporation has only such powers as are specifically granted, and such as are necessary for carrying the former into effect; and that these powers can be exercised only for the purposes contemplated by its charter or act of incorporation. But it may borrow money or deal in credits, or become a party to negotiable paper, by purchase or otherwise, in the transaction of its legitimate business, if that is a convenient mode of conducting it, unless expressly prohibited. And the legal presumption, until the contrary is shown, is that its acts of that kind are done in the regular course of its authorized business.

2. The statutes of one state or country, when they become the subject of adjudication in another state or country, are to receive the same construction that is given them in the courts of the former, where that construction is made to appear.

At law.

Ranney, Backus & Noble, for plaintiff.

Kelly & Griswold, for defendants.

WILLSON, District Judge. This is an action of assumpsit against the defendants, [J. M. and E. T. Sterling], as makers of two promissory notes of two hundred and fifty dollars each. The notes were dated and executed at Cleveland, Nov. 1, 1853, and payable respectively in one and two years, to the order of T. Dwight. and by him indorsed. The plaintiff is a corporation, organized under a general statute of the state of Connecticut (passed in May, 1857), which

authorizes the formation of joint stock corporations, etc. The one hundred and ninety-sixth section of this law provides that "any number of persons, not less than three, who, by articles of agreement in writing, have associated or shall associate according to the provisions of this chapter, under any name assumed by them, for the purpose of engaging in and carrying on any kind of manufacturing, mechanical, mining, or quarrying business, or any other lawful business, and who shall comply with the provisions of this chapter, shall, with their successors or assigns, constitute a body politic and corporate, under the name assumed by them in their articles of association." It is also provided in the one hundred and ninety-eighth section of the same act that "the purposes for which every such corporation shall be established, shall be distinctly and definitely specified by the stockholders in their articles of association, and it shall not be lawful for said corporation to direct its operations or appropriate its funds to any other purpose." The plaintiff, by written articles of association, obtained a legal existence and a name as a corporation under this law, on the 5th day of January, 1849. Its declared purposes are set forth in the second article of the association. This article declares, "the object and business of said corporation, and the business for which it is established, is the refining of metal and the manufacture of rolled copper and brass and other metals and articles manufactured therefrom; and the buying and selling of other articles of trade and merchandise, and generally to do all acts connected with or incident to said business, or the prosecution of the same." The right of recovery here is resisted upon the grounds that the plaintiff had no power to make the contract whereby it became the holder of the notes in question, and that, hence, the notes in the possession of the plaintiff as indorsee are void, and the defendants discharged from liability. The testimony of Timothy Dwight (the payee of the notes) in relation to their negotiation and transfer, is that on the 1st of September, 1854, he sold the one that first became due to the plaintiff, for cash, and received its full value, which at the time was the face of the note and interest, less discount. At a subsequent period, and before its maturity, he negotiated the other note for a valuable consideration, and indorsed the same to William Cornwell. Cornwell testifies that he received this last note of Dwight in 1855, and in payment of a pre-existing debt, and that before the note matured he transferred it to the plaintiff for a monied consideration, he at the time being indebted to the plaintiff. This is the substance of the evidence introduced by the defendants. This defense brings to its aid no equitable considerations. It is not pretended that the debt, evidenced by these notes, has been paid, or that it is not justly

¹ [Reported by Albert Brunner, Esq., and here reprinted by permission.]

12 FED. CAS.—56

due to somebody. Nor is it denied that these notes were duly indorsed to the plaintiff, and full value paid for them. The question presented is strictly a legal one, and involves the inquiry of the power and capacity of the plaintiff to contract and thereby become the lawful owner of this commercial paper.

The principle is well established and of universal application that a corporation has no powers except those specifically granted, or such as are necessary for carrying into effect the powers expressly granted. Or, as Mr. Angel illustrates the principle, "if the object of a corporation is to insure property, it cannot exercise the power of acting as a banking institution." And when a corporation is not in any degree restricted or curtailed as to the mode of doing its business, its powers, whether expressed or implied, can only be exercised to effect the purposes for which they were conferred by the legislature. And yet an express authority is not indispensable to confer upon such an institution the right to borrow money, to deal on credit, or become drawer or indorser or acceptor of a bill of exchange, or to become a party to any other negotiable paper. It is sufficient if it be implied, as the usual and proper means to accomplish the purposes of the law of its creation; and these implied powers are incident to all corporations created for manufacturing, mining, or mechanical purposes, when not expressly prohibited in their character or by a general law of the state. The presumptions of law arising in favor of the contracts of a corporation are well defined by numerous well adjudged cases. The doctrine is this: "If a corporation is authorized to raise money on promissory notes for a particular purpose, or if, as is frequently the case with other than banking institutions, it may receive notes in the course of its proper business, evidence may be admitted in the one case in favor of the corporation, and in the other against it to impeach the notes, by showing they were issued for another purpose, or received in the course of business improper or forbidden to it. As in ordinary cases, 'ut res magis valeat quam pereat,' the presumption is always in favor of the validity of the contract; or, in other words, it will be presumed that the debt was due, or the note or other security given in the lawful course of business, until the contrary is shown." Ang. & A. Corp. 242; 4 Hill, 442.

The real inquiry, then, or rather the material question for determination, is whether the negotiation and transfer of the notes to the plaintiff was an act which falls under any legal prohibition. The transaction, upon a careful consideration of the proofs in the case, was clearly a purchase of the paper by the plaintiff. There is no evidence that this corporation ever kept an office of discount and deposit, or was at any time engaged in a business foreign to the objects specified in its charter. Hence, the legal presumption is that the notes were purchased for a legitimate purpose, in the absence of proof to the contrary; and it certainly requires no forced construction of the law to declare the transaction appropriate and needful in the ordinary business affairs of the company. The plaintiff's location and place of business were in Connecticut. Its chartered powers (as declared by the articles of association), comprise the refining of metals—the manufacture of rolled copper and brass and other metals, and articles manufactured therefrom, and the buying and selling of other articles of trade and merchandise. Suppose the company, in its business operations, found it necessary to purchase brass in Boston, or copper in Cleveland, two well-known markets for those commodities? Can it be urged that it could not purchase a bill of exchange on Boston at a premium, or a certificate of deposit on Cleveland at a discount, in order to place its funds where they were required for use? And if drafts and certificates of deposit could be bought for such an object, why not promissory notes? We can discover no difference of principle in the two cases, as the object to be attained is the same in both.

The necessities of trade, in a country so widely extended as our own, have brought into use various modes of effecting the exchanges between different and distant localities; and it is accomplished in most instances by the purchase and sale of commercial paper. This corporation, then, has done no more in the purchase of the notes in question than was authorized by its charter, or more than its declared purpose of doing, as expressed in the second article of its association. And as the transaction itself stands unimpeached by any proof, the presumption of law is that the notes were obtained by the company as an incident to its business and in the legitimate prosecution of the same. But it is urged by counsel that the weight of authority is against the capacity of the plaintiff to purchase these notes by way of discount, and maintain suit upon them. At first view there would seem to be force in the objection. In the cases of People v. Utica Ins. Co., 15 Johns. 358, and Utica Ins. Co. v. Scott, 19 Johns. 1, this question was fully discussed. The court there held an insurance company incapable of discounting a promissory note, and consequently unauthorized to bring suit upon it as indorsee. The note there was adjudged void. These decisions of the courts of New York and the subsequent adjudications of those courts upon the same question, turned entirely upon the restraining act of the state, which act declares, "that all notes and securities for the payment of money or the delivery of property, made or given to any such as-

sociation, institution, or company not authorized for banking purposes, shall be null and void." And it has been properly held that this act could not be evaded by making the note payable to individuals, the corporation claiming as indorsee. We cannot well see how the New York courts could have decided otherwise under this prohibitory law. In the case of New York Fireman Ins. Co. v. Ely, 5 Conn. 560, the supreme court of Connecticut followed the line of decisions previously marked out and defined by the courts of New York. The insurance company in that case was a corporation, chartered by the legislature of New York; and not only was it restricted in its powers by express terms in its charter, but it was also subject to the disabling statute of that state. Its charter being a legislative enactment of New York, it was to be governed in its construction and in the interpretation of its powers by the judicial decisions of the state of its creation. We see nothing in the doctrine of these authorities (cited by the defendant's counsel), to change or vary the principle of law which obtains in, and which in our opinion governs this case. We are satisfied that the notes were purchased by the plaintiff in the prosecution of its legitimate business, and that the transaction was lawful by virtue of the statute of Connecticut, and of the general power contained in the second article of the company's organization, viz., to do all acts connected with or incident to said business, or the prosecution of the same. Judgment will be rendered for the amount of the notes and interest, in favor of the plaintiff.