## Case No. 7,241.

In re JAYCOX et al.

[7 N. B. R. 578.] 1

District Court, N. D. New York. Feb. 19, 1873.

HALL, District Judge. This is an application to expunge the claim or proof of debt of the People's Safe Deposit and Savings Institution of the State of New York. Upon a re-examination of such claim, in pursuance of the thirty-fourth general order in bankruptcy, before the register in charge, it appeared to him that the claim ought to be expunged. This was objected to by the claimant, and thereupon an issue was certified into this court for determination. The proof of the claim to the amount of twenty-seven thousand seven hundred and seventy-two dollars and twenty cents, besides inter-

est, is contained in a deposition made on the 4th day of May, 1872, by the then cashier of the claimant. In this deposition it is declared that the statement of the account between the said corporation and the said bankrupt, hereto annexed, is "a full, true and complete statement of account between the said corporation and the said bankrupt;" but there is not, in the body of the deposition, any statement of the amount, character or consideration of the indebtedness. There is no statement of account annexed to the deposition, but the paper annexed contains a list of twelve notes, of five different dates, between the 14th of January and the 2d of April, 1872, amounting, in the aggregate, to the sum of twenty-seven thousand seven hundred and seventy-two dollars and twenty cents. This list shows that notes were due at different times, from seventy-two to eighty-four days after their respective dates, and were all endorsed by one or more endorsers. The list purports in its heading to be a list of "Notes of Jaycox & Green, Owned by the Claimant," and at the bottom of the list is the following: "The above being all for money loaned upon the notes above mentioned." There is nothing in the deposition, or paper annexed, to show how much money was loaned upon such notes, or when, or to whom; nor do they show that the money so loaned was loaned by the claimant, except, as it may possibly be inferred from the statement in the heading of the list, that the notes are owned by the claimant, and the statement above copied, that they were all for money loaned, &c. The register's report of the proceedings before him states, that from the evidence, the following facts were established: (1) The People's Safe Deposit and Savings Institution of the State of New York, is a corporation created under and by virtue of the provisions of an act of the legislature of the state of New York, entitled, "An act to incorporate the People's Safe Deposit Company of the State of New York," passed May 14. 1868. See Sess. Laws 1868, p. 1839. (2) That the People's Safe Deposit and Savings Institution of the State of New York, had one banking office in Syracuse and one in Utica. (3) That from April, 1871, until September, 1872, and until the appointment of a receiver for said corporation, Patrick Lynch was cashier of the banking office of said corporation at Syracuse. (4) That during the time said Lynch was cashier as aforesaid, the People's Safe Deposit and Savings Institution of the State of New York, did a regular banking business, except it did not issue any circulation of its own; and also did a savings bank business. That the entire business of the corporation at Syracuse was kept in one set of books. That during that time, this corporation, at Syracuse, kept a large number of merchants' accounts, discounted largely for merchants; and that, at the time of the appointment of receivers, the corporation held, of discounted commer-

1 [Reprinted by permission.]

cial paper, between six and seven hundred thousand dollars, at the Syracuse office. (5) That Jaycox & Green, prior to April 16, 1872, and up to that date, were merchants at Syracuse, doing a very large business, and that during the time Lynch was cashier of the People's Safe Deposit and Savings Institution of the State of New York, discounts to the amount of several hundred thousand dollars were granted Jaycox & Green by this corporation, upon their (Jaycox & Green's) paper. (6) That at the time of the filing of the petition in bankruptcy by Jaycox & Green, the People's Safe Deposit and Savings Institution of the State of New York, held of paper of Jaycox & Green, with Judge Comstock's endorsements, which it had discounted for Jaycox & Green, twenty-seven thousand seven hundred and seventy-two dollars and twenty cents; and it had also procured three notes of Jaycox & Green, with Judge Comstock's endorsement, which it had discounted to be re-discounted by the Albany City Bank, which the People's Safe Deposit and Savings Institution of the State of New York. have since taken up and now own, said notes being for two thousand five hundred dollars each, making the sum of seven thousand five hundred dollars aside from, and in addition to the sum of twenty-seven thousand seven hundred and seventy-two dollars and twenty cents above mentioned. The register further reported, that from the undisputed evidence in the case, it appeared that the People's Safe Deposit and Savings Institution of the State of New York carried on a regular banking business at Syracuse during the time in which Mr. Lynch was cashier, and that all of the paper of Jaycox & Green held by it, was paper discounted by it in its regular course of business.

The conclusions of fact reported by the register, as above stated, are fully supported by the evidence returned, and the issue made between the representatives of the claimant, (now an involuntary bankrupt) of the one part, and the creditors and assignee of Jaycox & Green, of the other part, is purely one of law, depending, to a large extent, upon the provisions of the act incorporating the People's Safe Deposit and Savings Institution of the State of New York, and the laws of the state generally known as the restraining acts. This act of incorporation contains provisions not ordinarily found in the charters of savings banks, or in those of safe deposit companies. Some of them are of doubtful interpretation; possibly because they were hastily and carelessly drawn, or, possibly, because they were deliberately penned with the intention of giving to the corporation, by language, the full force of which was not likely, in the hurry of legislation, to be appreciated by those voting for the bill, extraordinary and unusual powers which would not have been knowingly and deliberately conferred by the legislature. The act of incorporation declares that the capital stock of the corporation shall be two hundred thousand dollars, with power to increase, from time to time, to two million dollars, and it makes other general provisions in respect to the organization of the corporation, and the conduct of its business. Its general purpose, powers and privileges, as well as the liabilities and restrictions to which it was made subject by the express provisions of its charter, will best be shown by giving at length the 5th, 6th, 7th, 11th, 13th, and 14th sections of the act, which are in the following words.

"Sec. 5. The business and general object of the said corporation shall be to take and receive on deposit, as bailee for safe keeping and storage, coin, bullion, gold and silver-plate, jewelry, United States bonds, and other bonds, stocks or securities, specie and other valuables and personal property, upon such terms and for such compensation as may be agreed upon by said corporation and the bailors respectively of any such property as aforesaid. The said corporation shall be authorized to receive money from any estate, company, association, person or persons, on deposit, and give a receipt, certificate or book therefor to the party or parties making such deposits, and which shall be subject to their order only, and any rate of interest, not exceeding that allowed by law, shall be paid for such deposits.

"Sec. 6. The said corporation may make such special regulations in reference to deposits as shall best aid the depositors and parties interested, by accumulating and increasing the same, allowing and receiving such rate of interest therefor, not greater than hereinbefore mentioned, as may be agreed upon. May negotiate United States stocks and bonds, the bonds and stocks of this and other states, also the bonds of cities, counties and towns of the said other states and corporations, and associations legalized by the legislature of this and other states, and the statute laws thereof respectively.

"Sec. 7. The said corporation shall have power to purchase and hold all such real and personal estate as may be necessary and convenient for the accommodation and transaction of its business, to take and hold any real estate as security for, and in payment of loans debts due or to become due to said corporation, and to purchase any real or personal estate at any sale, to enforce its securities, or the payment of debt due, made by virtue of any process, mortgage or deed of trust, and to hold said property, or to sell and convey the same, or any part thereof, at such price and under such conditions as the directors or officers may think proper."

"Sec. 11. It shall be the duty of the board of directors to invest the capital stock of the said corporation, and to keep the same invested in good securities; and it shall be lawful for the same to make such investments of its capital and of the deposits and

funds accumulated by its business, or any part thereof, in bonds and mortgages on unencumbered real estate, worth at least fifty per cent. more than the sum loaned thereon, and also in the public securities or stocks of any state, or of the United States, or in the stocks and bonds of any city, county or town, corporation or association or otherwise, of any state or the United States, in manner and form as the directors and officers of said corporation may think proper. Said directors and officers shall be, and are hereby authorized to conduct the business and affairs of said institution, in such manner and form as in their discretion shall be proper and mutually beneficial to the parties interested and doing business therewith, not inconsistent with the conditions of this state or any state, or of the United States."

"Sec. 13. The stockholders of the said corporation shall be severally liable for all debts and liabilities of the said corporation, to an amount equal to the amount of the stock held and owned by them respectively, which liability shall be in addition to their liability to pay in full the stock subscribed for or purchased by them.

"Sec. 14. Said corporation created under this act shall possess the general powers and privileges, and be subject to the liability and restrictions contained in the title third, of chapter eighteen, of the first part of the Revised Statutes, so far as applicable thereto."

The validity of the notes upon which the claim and proof of debt now in controversy are based, depends upon the question whether the corporation, under the provisions of the act of incorporation hereinbefore stated, was authorized by law to employ its funds in discounting commercial or accommodation paper as a part of its regular business; in other words, to carry on the business of a bank of discount, as well as the proper business of a savings bank, because by the then existing laws of the state, and which are still in force, it was provided (section 3, tit. 20, c. 20, pt. 1, Rev. St.) that "no incorporated company, without being authorized by law, shall employ any part of its effects, or be in any way intrusted in any fund that shall be employed for the purpose of receiving deposits, making discounts, or issuing notes or other evidences of debt to be loaned and put into circulation as money," and by section five of the same title, that "all notes and other securities for the payment of any money, or the delivery of any property, made or given * * * to secure the payment of any money loaned or discounted by any incorporated company or its officers, contrary to the provisions of the third section of this title," (the section just copied) "shall be void." And section 4 of title 3 of chapter 18 of the first part of the Revised Statutes to which the corporation is expressly made subject by the fourteenth section of the act of incorporation, provides that "no corporation created or to be created, and not ex-

pressly incorporated for banking purposes, shall, by any implication or construction, be deemed to possess the power of discounting bills or notes, or other evidences of debt," etc.

So far as the validity of the notes referred to in the proof of debt and statement annexed, on which the claim in controversy now rests is concerned, the question is not one of public policy, or of the effect of a statute which simply prohibits the business of discounting, for the legislature has added to the prohibition an express provision that the notes and securities taken in violation of the prohibitory enactment shall be void. It is, therefore, only necessary, in respect to the question of such validity, to determine whether the claimant was authorized by law to carry on the business of discounting bills and notes, and to employ its funds and effects therein, for it was in the regular course of its long continued business of that character that such notes were discounted. In determining the extent of the authority intended to be given by the provisions of the act of incorporation, it must be borne in mind that the constitution of this state provides that "the legislature shall have no power to pass any act granting any special charter for banking purposes," (Act 8, § 4,) and it should not be held, except upon the most conclusive evidence, that the legislature intended to confer, upon the corporation they were about to create, powers which they were prohibited from granting in a special charter. And if such was the intention of the legislature, and such intention could not be carried into execution without a violation of the constitutional provision just referred to, the provisions of the charter, so far as they conflicted with such constitutional provisions would necessarily be held to be void. But no such intention can be imputed to the legislature. Savings banks are not deemed within the constitutional prohibition, and such institutions, as well as the so-called safe deposit companies, have been properly created by special charters.

The arguments in support of the authority, under the act of incorporation, to carry on the business of making discounts, are founded mostly upon the facts that the act requires a capital stock of at least two hundred thousand dollars, while no stock is required in the case of a savings bank proper; that the stockholders are made personally liable for the debts of the corporation to an amount equal to their stock, while no personal liability of that character is ever imposed upon the trustee or officers of a savings bank, and the allegation, that by force of the provisions of the eleventh section of the act, the directors of the corporation have full authority, especially in consequence of the use of the words "or otherwise" in the first clause, and the broad language of the concluding clause of the section, which, it is said, gives them an almost unlimited discre-

tion in respect to the business and affairs of the corporation, to carry on the business of making discount. The business of a safe deposit company, which is given the first, if not the most prominent place, alike in the title and in the body of the act, requires a capital, and renders the personal liability clause entirely appropriate, if not important, to the success of that branch of the business of the corporation; and certainly both the capital and personal liability were properly provided for in view of the brokerage business it was authorized to carry on under the concluding sentence of the sixth section of the act. Very little, if any, weight should therefore be given to the arguments founded upon the provisions for capital and for the personal liability of the stockholders.

It is insisted that by the eleventh section of the charter, the directors are authorized to invest the capital, and deposits, and funds of the corporation in bonds and mortgages, public securities, or otherwise, and the argument in favor of the authority claimed, chiefly rests upon the words "or otherwise," and the language of the next clause which, it is said, gives to the directors a discretion limited only by the constitutions (not the laws) of this state or any state, or of the United States. If the power of the legislature was unlimited by the constitution, and the court was not precluded by the provisions of the Revised Statutes above quoted from holding that the corporation could take banking powers by implication or construction, the language relied upon would not be held to authorize the corporation to engage in the business of discounting bills and notes, with a capital of two millions of dollars, while the provisions of the restraining acts remain in force, or to sell lottery tickets, or do any other act or acts specially prohibited by the laws of the state. To abrogate all prohibitory laws of the state, which might otherwise have been binding upon the corporation and its officers, and to give them power to do everything not prohibited by the constitution of the United States or of one of the states which they might deem it discreet to do in the conduct of their business, even when prohibited by general laws applicable to all other corporations, would require other and different language, and language so unequivocal and so positive as to exclude all possible doubt of the legislative intention.

The argument founded upon the use of the words "or otherwise," in the eleventh section, is entitled to consideration, but is not deemed sufficient to maintain the alleged authority of the claimant. The authority given is to make investments of its capital and of the deposits and funds accumulated by its business "in bonds and mortgages on unencumbered real estate, worth at least fifty per cent. more than the sum loaned thereon; and also in the public securities or stocks of any state, or of the United States, or in the stocks or bonds of any city, county, or town, corporation or association, or otherwise, in manner and form as the directors and officers of said corporation may think proper." To "make investments," in the ordinary and usual acceptation of the term, is a very different thing from the discounting of commercial or accommodation paper having but a short time to run; the first usually denoting the purchase or taking of something of a permanent nature, and the latter being the making of loans upon paper maturing at short dates, and generally the more profitable the sooner the money loaned is to be returned. In addition to this, the character and description of the securities or property in which only the corporation would be entitled to invest, if the words "or otherwise" had been omitted, show that it was to instruments of a permanent character that the provision was intended to apply. If by the words "or otherwise" the legislature intended to give to the directors an entirely unlimited discretion in the disposition of the capital, deposits and funds of the corporation, it was clearly unnecessary to specify, as they had already done, many different classes of securities in which they might invest. Again the words "or otherwise" are so placed that they seem to apply to the parties whose stocks or bonds might be taken, rather than to the nature of the loans or transactions, or the form of the securities. Literally, the words enlarge indefinitely the right to invest in stocks or bonds by not limiting the right to those made by the corporations and associations before named, but extending the right to all stocks and bonds issued by any party who is "of the United States or of any state," in contradistinction to the stocks or bonds of foreign states or their citizens. But aside from all this, it is incredible that the legislature, if it had intended to depart from the settled policy of the state in respect to the business of making discounts by corporations without express authority of the law, which had been rigidly maintained for more than half a century, and to repeal the restraining act, so far as this corporation was concerned, would have expressed such intention in such uncertain and confused language and left the repeal to a doubtful implication lurking in language apparently introduced for other purposes.

The authority given by the general language of the concluding clause of this eleventh section, and the authority given in the sixth section to "make such special regulations in reference to deposits as shall best aid the depositors and parties interested by accumulating and increasing the same, allowing and receiving such rate of interest therefor, &c., may well be held to authorize them to deposit such moneys in banks or trust companies or to loan them in any other form not prohibited by law, but cannot be held to repeal by implication, in respect to this particular corporation, the provisions of the restraining act. In short, it is very clear that

the claimant was not authorized by law to employ any part of its funds or effects for making discounts; that the acts of its officers in discounting the notes upon which its claim is based were in direct violation of the provisions of the restraining laws of the state, and that such notes are therefore void. An order will be made expunging the proof and rejecting the claim as now presented; but, for reasons hereafter stated, it must be without prejudice to the right of the assignees in bankruptcy of the People's Safe Deposit and Savings Institution of the State of New York to make proof of a claim or debt for money loaned to Jaycox & Green, or had and received by them for the use of the corporation or its assignees in bankruptcy, or of any other claim or debt other than upon notes or securities taken or received on the making of discounts in violation of the restraining act.

It appears by the records of this court that such corporation has been adjudicated a bankrupt, and that assignees of its estate have been appointed in bankruptcy proceedings, which are still pending. Upon the argument in this case it was urged that even if the securities taken upon discounts of the notes of Jaycox & Green were void under the restraining acts, the assignees in bankruptcy were entitled to recover the money loaned; and that, therefore, the claim of the corporation should not now be expunged. This view of the case has not been sustained. There is no proof showing the amounts loaned, or the time when the loans were made. The only proof approaching the form of the proof of debts required under the bankrupt act which has been made, is the proof of an indebtedness to the claimant as the owner of negotiable paper; not an indebtedness for money lent and advanced to the bankrupts, or by them had and received to the claimant's use; and, therefore, it has been decided that the proofs heretofore filed must be expunged.

The question of the right to prove a claim for the money loaned or advanced upon the alleged discount is entirely different from the one that has been determined, and the papers and issue upon which the decision has now been made are not in proper form for a final decision of the question which may be presented on proof of a claim for money loaned and advanced to the bankrupts, or by them had and received to the use of the claimants or their assignees in bankruptcy.

In Utica Ins. Co. Cases, 19 Johns. 1, 8 Cow. 20, 3 Wend. 296, and 8 Wend. 652, it was held that under the provisions of the restraining acts, the lending of money was not declared to be void, and that, therefore, whenever money had been lent it might be recovered, although the security itself was void; and there is, to say the least, so much reason to believe that a claim for the money loaned may be sustained by the assignees of the claimant that they ought to be permitted to present the question under proper proofs for a final decision. In addition to the view of the case thus presented, under the authority of the Utica Ins. Co. Cases, there is another ground on which the assignees of the claimant may possibly be entitled to prove a claim, even if the contract and acts of lending the money advanced to the bankrupts are void. The claimant is now in bankruptcy, and its assignees, for all beneficial purposes, represent the corporation and its creditors; and such assignees, like receivers under the state statutes, should be authorized to assert the rights of the creditors and stockholders when affected by the fraudulent or illegal acts of the corporation or of its officers, and to recover the value of the property or money obtained from the corporation by the bankrupts under a void contract through which no title to the property or money obtained could pass to the bankrupts. Gillett v. Moody, 3 Comst. [3 N. Y.] 479. In case of a fraudulent or illegal disposition of the property of a corporation by its directors or officers, its stockholders and creditors should not be confined to their remedy against the directors or officers alone, but the transfer being illegal and void they should be allowed their remedy against the party to whom the transfer has been made. Under the authority of the case just cited and Gillet v. Phillips, 3 Kern. [13 N. Y.] 114; Nathan v. Whitlock, 9 Paige, 152; Talmage v. Pell, 3 Seld. [7 N. Y.] 328; and other similar cases,—the assignees in bankruptcy are entitled, independently of the doctrine of the Utica Ins. Co. Cases, to have the right reserved to present their claim for the moneys advanced to Jaycox & Green in such form as to them shall seem most appropriate, in order that their claim may, in such form, be presented for a final decision.