WRIGHT
*v.*
TAYLOR.

WRIGHT *vs.* TAYLOR. (*a*)

A bill which does not pray that the cause may be heard at the same time with another cause and one decree be had in both, is not, in form, a cross bill. But, *it would seem*, if they are calculated to present one and the same point, although for different objects, they may stand together and be prosecuted at the same time.

It is very questionable whether a mere matter of defeasance or condition amounts to a contract which a court of law or equity can recognize as the foundation of an action, or of a bill for a specific performance.

A protestation in the attesting clause of a deed has no effect upon it, provided it is not at variance with the terms of the deed or can have no influence in qualifying or changing its meaning.

*December* 29, 1831.

*Practice.*
*Cross Bill.*
*Defeasance.*
*Protestation.*

THE facts in this case sufficiently appear in the opinion of the court.

It came up on bill and general demurrer for want of equity.

Mr. *Jona. Prescott Hall,* in support of the demurrer.

Mr. *David Graham,* for the complainant.

*February* 27.
1832.

THE VICE-CHANCELLOR.   The bill in this cause states, amongst other things, that on the seventeenth day of May one thousand eight hundred and thirty, the defendant executed and delivered to the complainant a bond in the penal sum of fifty thousand dollars, which recited that the complainant and Andrew Taylor had been in partnership under the firm of Wright, Taylor & Co.; that articles of agreement, by and under the direction and instructions of the defendant, acting for Andrew Taylor and one David Selden, and the complainant

(*a*) Upon an appeal from the decision here made, it was affirmed by the Chancellor, and then, on a further appeal to the Court of Errors, his decision was also confirmed.

acting for himself, had been agreed upon; triplicate copies whereof had been executed by the complainant, which were to be sent to Liverpool to be executed and confirmed by Andrew Taylor and David Selden and to be returned to the United States in nine months, (the dangers of the seas, death of the parties or other unavoidable accidents excepted;) and that, in the mean time, the complainant was to remain free from arrest in any suit, by and on the part of the defendant, or of Andrew Taylor and David Selden; and declaring the condition of the bond to be, that if the defendant should, at any time within nine months from the date, deliver to the complainant the articles of agreement signed, sealed and delivered by Andrew Taylor and David Selden, being a duplicate of the copy annexed to the bond, (the danger of the seas, death of the parties or other unavoidable accidents excepted) and should, in the mean time, keep the complainant free from arrest, upon any suits brought against him, &c., then the bond was to be void or else to remain in full force.

The articles of agreement, mentioned in the bond, related to the dissolution and settlement of the partnership which has existed at Liverpool between the complainant and Andrew Taylor. David Selden was made a party in consequence, as is stated in the instrument, of his having some interest in the profits of the concern " in lieu and satisfaction of his services " rendered."

The articles being executed in triplicate by the complainant in the city of New York, were forwarded to Liverpool to be executed by Taylor and Selden; and were executed by their signing and sealing the same as written: but the attestation clause subjoined, signed by the subscribing witness, states, that it was sealed and delivered by Andrew Taylor and David Selden in his presence, " it being first understood, declared " and protested by them, that notwithstanding the recital above " contained, the said David Selden was not a partner, nor had " any share in the profits or loss of the said concern, but that " he was merely entitled to compensation for services by a " commission or per centage on the profits, without being a " partner." In this form the instrument was returned to New ·

York, but not within the nine months; and the bond being forfeited, the complainant, on the sixth day of July one thousand eight hundred and thirty-one, commenced an action of debt thereon in the Supreme Court. Almost immediately afterwards, the defendant tendered the instrument to the complainant (executed as before mentioned) and offered to pay his costs of the suit at law. The complainant declined receiving it. Upon which, the defendant filed his bill in this court, to be relieved from the bond; praying an injunction to restrain the suit at law, which was granted; and also, that the complainant might be decreed to accept the instrument, with such damages as he had sustained by reason of the delay, and give up the bond to be cancelled. The complainant put in an answer to that bill, insisting, among other things, that the articles of agreement, as executed and tendered to him for acceptance, were materially variant and not in fact the articles of agreement which the defendant, by the condition of his bond, was to cause to be executed and delivered to him; had sustained great damage by the detention; and submitted, that he was not bound to accept the same as a compliance with the condition of the bond.

The bill in the present cause sets forth all these matters. It also alleges, that it was a principal object with the complainant, that Selden should be a party to the settlement in the express capacity and character of a copartner of the firm of Wright, Taylor & Co; that, as such, the complainant had known him to transact business in the firm; and, as such, he was intended to be and in fact was recognized in the settlement and in the articles of agreement. He submits, that the aforesaid protestation tends to prejudice if not totally avoid the settlement, as well as to subject him to damage and deprive him of the security he would otherwise have against Selden for a contribution as a copartner, provided Taylor should, in any event, fail to make payment of the debts of the firm, as he has covenanted to do, and the creditors should resort to the complainant. And he insists, as advised, that should the articles of agreement prove materially variant and voidable or void, and not be executed as originally prepared, and the condition of the bond be not

specifically performed, he may and most probably will be sub-
jected to damages exceeding the penalty of the bond. The
bill prays that the defendant may specifically perform the con-
dition of his bond, by procuring the execution of the articles
of agreement as they were originally prepared; and pay the
damages sustained by reason of the delay: or, in case the de-
fendant should not, within a time to be limited by the court,
tender the articles of agreement, duly executed, that he may
pay the full penalty of the bond. And, for further relief.

The defendant demurs to the whole bill for want of equity.

One question to which the discussion of the demurrer has
given rise is, as to the character of the bill, whether it be an
original or a cross bill? It is not in form a cross bill, since it
does not pray that the causes may be heard *together* and one
decree be made upon both. Still, they are calculated to present
one and the same question, although for different objects; and
I am not prepared to say, they may not stand together and be
prosecuted at the same time. So far as the present bill seeks
the payment of the damages for the breach of the bond, it ought
not to be sustained: because, there is an adequate remedy at
law for the purpose and to which the complainant, in the first
instance, resorted. Indeed, the first bill contains an offer to
make compensation in damages for the delay. But, whether
there is not, at least, some equity in his demand for a specific
performance, supposing the defendant has not already perform-
ed the condition of the bond, is a question not so entirely free
from doubt as would perhaps justify me in allowing the demur-
rer: *Todd* v. *Gee*, 17 *Ves.* 273.

Nevertheless, it may be questionable, whether a mere matter
of defeasance or condition amounts to a contract which a
court of law or equity can recognize as the foundation of an
action or of a bill for a specific performance? *United States*
v. *Brown*, 1 *Paine's Rep.* 422.

I shall, therefore, proceed to examine the main question in-
volved in this controversy; and which is fairly presented by
the bill and demurrer: whether the form or manner of executing
the articles of agreement at Liverpool is a compliance with

the bond and satisfies its condition? The point of delay, is another question.

The bill insists, and so the complainant's counsel argues, that the declaration or protestation of the parties, on signing and sealing the instrument, as set forth in the attestation clause, has varied or made it a different instrument from what it was when he executed it. Whether it is so or not depends upon the legal effect or operation of the protestation. If, upon comparison, it is found to be not at variance with the terms of the instrument or can have no influence on the body of it to qualify or change its meaning, then the instrument remains the same as originally prepared. The agreement, as drawn up in the form of an indenture, purports to be made between the three parties, Wright, A. Taylor and Selden; and recites, that Wright and Taylor had been the copartners under the firm of Wright, Taylor & Co., which was dissolved by Taylor on the first day of November one thousand eight hundred and twenty-nine'; not saying, that Selden was a partner or had acted with Taylor in the dissolution—although it does recite that Selden " had " some interest in the profits of the concern, in lieu and satis- " faction for his services rendered." It also goes on to state, that Wright and Taylor had agreed to put an end to the part- nership concern, as of the said first day of November; that Wright had agreed to secure and pay to Taylor the sum of thirty-five thousand dollars and assign to Taylor all his interest in the partnership property; and that Taylor had agreed to pay all the remaining and outstanding claims against the firm. The instrument also provides, in due form, for carrying the objects into effect. Taylor alone covenanting with Wright to pay all the debts which they jointly owed and save him harm- less therefrom. The instrument concludes with mutual releases, first from Taylor and Selden severally to Wright, and then from Wright to each of them, of all claims and demands as against each other.

Such is the general outline of the articles of agreement, in no part of which is Selden recognized or admitted to be a partner. The contrary is plainly inferable from the whole

tenor of the instrument. His interest in the profits might render him liable to third persons dealing with the partnership; but, the fact that it was intended as a mode of compensation for his services in the business of the concern, excludes all idea of a partnership *inter se.* When, therefore, they made the declaration or protestation that Selden was not a partner, nor had any share in the profits or loss of the concern, but was merely entitled to compensation for services by a commission or per centage on the profits, it appears to me they did nothing more than repeat what was already stated in substance in the body of the instrument. Although the phrase " notwithstanding " the recital," is used, I can perceive no difference in the import of the language; and there is certainly none as to the fact of his not being a partner as between themselves: for it is clearly admitted by the instrument, as well as thus verbally declared, that such partnership did not exist. Why then was this protestation made? Probably out of abundant caution to prevent, if possible, the conclusion that Selden was a partner as to the world. But it is alleged in the bill, as a principal object with the complainant in agreeing to the settlement, that Selden should be a party to it in the express capacity and character of a partner; and yet, the instrument, as drawn and executed by the complainant himself, does not secure that object according to the plain and obvious meaning of its terms. Again, it is alleged, the protestation tends to prejudice the complainant and deprive him of the security he would otherwise have in Selden as a copartner for contribution, provided Taylor should fail to pay the partnership debts according to his covenants and the creditors were to come upon the complainant.

If the instrument had been executed without the protestation, it is impossible the complainant could have had any such rights or claims upon Selden for contribution. The complainant thereby conveys to Taylor all his interest in the partnership, and is content to accept from him, and him only, a covenant of indemnity against the partnership debts. I apprehend he is precluded, by acceptance of this covenant, from ever calling upon Selden for contribution, even if the latter was an admitted partner.

But his not being a partner, as shown by the instrument itself, would always and in any event protect him from the liability over to the complainant. The protestation, consequently, can never prejudice the complainant in this respect or deprive him of any such security or claim, because he is already deprived of it by the force and operation of the instrument as executed by himself. After this view of the case, it is unnecessary to enquire whether the protestation would in effect, vary the terms of the instrument, even if it expressed a different intent.

Considering the office of protestation, so far as it is known to the law, I am inclined to think it could not have such an effect: for it would be too much like admitting parol declaration or a mere verbal understanding to contradict and substantially vary the legal import of a solemnly executed written agreement: *Stevens v. Cooper*, 1 *Johns. Chan. Rep.* 425. I forbear, however, to express a decided opinion on this point. It is enough that, in my judgment, the protestation, as made and set forth in the attestation clause, is in no respect contradictory of or at variance with any thing contained in the written instrument as executed and intended by the complainant himself; that, therefore, a *tender of it in its present form is a specific performance* of the condition of the defendant's bond, so far as this suit is concerned; and, consequently, that the demurrer is well taken.

It must be allowed, with costs.