SIMPSON, Administrator, etc., v. McKAY *et al.*

McKAY *et al.* v. SIMPSON, Administrator, etc., *et al.*

*Cross-suits but one cause — Unauthorized judgment.*

An original and cross-suit are but one cause, and when they have been tried together, but one judgment should be rendered in both, which should embody all the points adjudicated in both actions.

An unauthorized judgment may be set aside after one year, when it stands in the way of a substantial right.

MOTION by Alexander and Robert McKay to compel John B. Simpson to enter judgment in the first above suit, upon the report of a referee and for general relief.

The case was this: The first above suit was brought by Simpson in the late court of chancery, in July, 1843, to foreclose a mortgage given by one Charles McKay to Andrew McKay, Simpson claiming that the mortgage had been assigned to his intestate by Andrew McKay. Alexander and Robert McKay were the owners of the equity of redemption. Alexander, Robert, and Andrew McKay answered the bill denying the assignment to Simpson's intestate, and Alexander and Robert alleged set-offs against Andrew. Testimony was taken before an examiner, and in May, 1852, the case came on for hearing upon pleadings and proofs, before the general term of the fourth district. There was no record evidence as to whether that court made any decision, but there was the opinion of Mr. Justice C. L. ALLEN, who sat at that general term, in favor of Simpson, and the testimony given in 1861, as follows: "That said court made a decision in favor of the plaintiff, as appears by the opinion of Judge ALLEN, to which deponent refers, and that no order or decree has ever been made, settled or entered upon such decision. That such opinion contained a direction for a reference to ascertain the amount due on said bond and mortgage." In April, 1855, a cross-action (the second above named action) was begun by Alexander and Robert McKay against Simpson and Andrew McKay, alleging payments to Andrew. Andrew made default. May 10, 1855, the following stipulation was entered into between Simpson and Alexander and Robert McKay:

"That the plaintiff in the original suit may take a judgment in such suit for the sum apparently due on the said bond and mortgage, to be computed by the clerk of Montgomery county, if not agreed upon, and the costs of the suit to stand as security. But such judgment is not to affect the right of the said Alexander and Robert, to have the original suit proceed so far as the accounting directed by the supreme court is concerned, or the right of the said Alexander and Robert to require an answer to such cross-complaint, and to have both said suits heard and decided together by the referee heretofore appointed, or a referee who may hereafter be appointed; or the right of the said Alexander and Robert to have applied on said judgment, or on said bond and mortgage, or on both, whatever sum may be allowed to them by said referee, or by the court on

account of the various claims aforesaid as payments on, or as set-offs, either legal or equitable, against said bond and mortgage, or against the said plaintiff. And such judgment is also not to affect the right of the said Alexander and Robert, to appeal from the same or any judgment which may hereafter be made in said suits; and it is further stipulated that all proceedings on said judgment shall be stayed until all proceedings in relation to said hearing, and the matters referred, shall be finally terminated at the further order of the court. And it is further stipulated that no objection shall be taken on said hearing to the proof of the said set-offs claimed in said cross-complaint, or to the allowance of the same, on the ground that they are not claimed in the answer in the original suit. And it is further stipulated that the question of costs in each suit, including the costs of the motion for leave to renew the motion to amend the answer, shall abide the final determination of the suits respectively, and if costs are not allowed, or costs are allowed to the said Alexander and Robert, such judgment shall be modified and changed accordingly. An order shall be entered to carry into effect this stipulation according to its spirit and intent."

An order was entered accordingly May 10, 1855. By virtue of this order the clerk of Montgomery county made a report as to the amount due October 31, 1855, and November 17, 1855. Simpson entered a judgment of foreclosure and sale in the original action upon that report. Afterward Simpson served his answer in the cross-suit denying the payments, pleading the statute of limitations, the judgment of November 17, 1855, as an estoppel, and the fact that the bond and mortgage had been assigned to his intestate, and that Alexander and Robert McKay had notice of it before the payments were made.

The cases were then tried together before a referee, who made one report in both cases in favor of Simpson, directing judgment of foreclosure and sale in the original action for the amount due as computed by him, and for dismissal of the complaint in the cross-action. Upon this report Simpson entered a separate judgment in the cross-action, September 17, 1868 ; this motion was then made by Alexander and Robert McKay, to compel Simpson to enter judgment upon that report in the original action.

*E. W. Paige,* for the motion.

*Henry Smith,* opposed.

BOOKES, J. This is a motion to compel the entry of judgment by the plaintiff in the first above-entitled action on the report of the referee, with liberty to the McKays to make and serve a case with exceptions, within the usual time thereafter.

The case is a remarkable one, as well for its antiquity as also for the intricate and strange, not to say irregular practice which has marked its progress to the present time.

The action by Simpson against the McKays and others was commenced in the old court of chancery in 1843, and was a simple action to foreclose a mortgage, the plaintiff claiming as assignee of the mortgagee. The McKays, Alexander and Robert, answered the complaint. They denied the plaintiff's title to the mortgage; also set up payments to the mortgagee in good faith prior to the transfer.

On these issues the case was brought to a hearing on the pleadings and proofs, at a general term of this court; and at the May term, 1853, it was decided in favor of the plaintiff as regards his title to the mortgage ; and the usual order of reference to compute the amount due was directed with some special instruction in regard to the alleged payments.

It seems, that at this stage of the case, and before any judgment or order embodying this decision had been in fact entered, the defendants, Alexander and Robert McKay, brought the cross-action claiming to be allowed payments and set-offs omitted in their answer in the former suit. · Why this end was not sought to be attained by an amended or supplemental answer, rather than by cross-action is not obvious. But such was the proceeding. Thereupon and before Simpson put in his answer in the cross-action, the parties entered into the stipulation of May 10, 1855.

This stipulation was entitled in both suits, and gave consent to the entry of judgment in the original action, for the sum apparently due on the bond and mortgage, to be computed by the county clerk, with costs of action. The stipulation contained other provisions which will be hereafter considered. This stipulation was the basis of the order granted at general term, May 10, 1855, and actually entered July 4, the same year, and modified January, 1864, by which order it was referred to the clerk to compute the amount due.

Under this order of May 10, the clerk made the computation and certified the amount at $3,317.93, October 31, 1855, and there-

upon the usual judgment of foreclosure was entered in the original action.

Now it will be observed that this judgment was based on the stipulation of May 10, 1855. It has no other foundation, and without the stipulation it was wholly unauthorized. The judgment must, therefore, be considered in connection with that stipulation, and must be controlled by its terms and provisions. And it may also be further remarked, that the cross-suit was also subjected to its provisions, and was thereafter conducted under and in accordance with that agreement even down to trial and judgment. This stipulation, 1st, gave consent to the entry of judgment of foreclosure in the original suit, but to stand as security; 2d, provided that such judgment should not affect the rights of the parties as to the alleged payments and set-offs; 3d, nor the rights of appeal; 4th, also provided for a stay of proceedings on the judgment; 5th, waived an apprehended objection to proof of set-off and its allowance; and 6th, reserved the question of costs in both suits for further consideration.

The next step was under this stipulation and the order entered to carry it into effect; and from this point the two actions were treated as one suit, the question in litigation being the deduction to be made, if any, under the claims of payment and set-off.

The cases were referred to a referee, who heard the proofs and made his decision, dated January 18, 1867. He found against the claims for payment and set-off; decided that there was due to the plaintiff in the original suit the sum of $4,445.25 at the date of his report; directed judgment of foreclosure in the original action therefor with costs; and further directed judgment against the plaintiffs in the cross-suit for costs.

Now following this decision of the referee, occurred the error, I think, which has led to the difficulty in the case. The trial embraced the subject-matter of both actions. The matter of the cross-suit was but a defense to the original action, and, therefore, the original cause and the cross-suit constituted but one action. *Field* v. *Schieffelin*, 7 Johns. Ch. 252, 253; 1 Hopk. Ch 48, 58. They were to proceed together; so the complaint here states, that "both suits may be heard together," as was in fact done. Indeed, it is the usual prayer in cross-bills that the causes may be heard together, and one decree be made in both. *Wright* v. *Taylor*, 1 Edw. Ch. 226, 229. So here the judgment on the referee's decision should have been entered

in both suits, but as one judgment. Then one appeal from the judgment would have brought up the entire case for review. Instead of so entering a single judgment, covering the entire subject of litigation, judgment in the cross-suit, only, was entered.

This course left the record imperfect. By the cross-suit relief was sought touching the matters of the original action. It was auxiliary to and dependent upon the original suit. Therefore judgment in the cross-action only could be but partial and incomplete. The principal cause of action would remain undisposed of. There was much more decided by the referee than was embraced in the judgment entered, and the defeated parties had the right of review as to the whole. So, I think, they may object to a practice which deprives them of this right. Now they ask to be placed in a condition to avail themselves of this right. They ask that judgment be entered on the record according to the decision of the referee, to the end that an appeal may be brought; and there should be but one judgment and but one appeal. The judgment roll should be entire, beginning with the summons and complaint in the original suit, and ending with final judgment in both actions.

The judgment entered November 17, 1865, by consent, was not intended to be final and conclusive between the parties. The stipulation which was the basis of the judgment clearly shows the reverse of the assumption.

It contemplated and provided for further action, a future trial and decision, and another judgment, with the right to review the entire case in due time. All this was agreed upon, was expressly stipulated for. It was not intended that this judgment should be enforced, without a review of the matters involved in the original action, in case the defeated parties should desire it. Now any practice which will prevent a review under these facts must work injustice. This view of the case doubtless induced the court at general term to order a re-argument of the appeal from the judgment entered in the cross-action, with the liberty to move for relief at special term. Perhaps I mistake the intention and purport of the general term order, but of this I am entirely satisfied; that the parties complaining may stand on their general right of appeal by law, further secured to them by the stipulation, and insist upon a review or a consideration of the entire case not brought before the court in fragments, but as a whole, of all the matters litigated in both suits. I think they may demand of the court that such right

be secured to them, and that it is the duty of the court to render the demand effectual. How, then, is this right of review to be attained in this case? Not by an appeal from the judgment entered by consent in 1855. It was stipulated that this judgment should not be final. Besides, one branch of the case (the subject of payment and set-off) had not then been examined, and was carried forward into the future trial. I do not understand that it is pretended that an appeal from this judgment could not be taken, or that it would be of any avail if taken. The principal part of the litigation was subsequent to its entry.

The moving parties on this motion insist that their right of review may be attained by an order requiring Simpson to enter judgment on the decision of the referee in the original action, and I am pointed to the direction for such judgment in his decision, then they say they can appeal. Perhaps the desired result might be reached in that way, but then there would be two appeals and two cases with exceptions mostly duplicated, based on a single decision of the referee, and I might add too, all in one cause, for the original suit, with its auxiliary the cross-suit, constitute but one action in point of fact. This course of practice would be anomalous and awkward certainly. If one judgment had been entered on the decision of the referee in both suits, following the decision in that particular all difficulties would have been obviated. This was the correct practice. Then under one appeal, and in one case with exceptions, the entire subject of litigation could have been considered. I think the record should be brought to that form still.

The notice of motion is sufficiently broad to authorize any order needful to the ends of justice, having in view the purpose sought by the motion, which purpose, I think, the moving parties are entitled to have answered. The fragmentary judgment entered in the case is an impediment to a full and complete review. It should be set aside as incomplete and out of place, and judgment on the decision, embracing all the subjects adjudicated, should be entered on the record. If that judgment be set aside it will carry with it the appeal, and then the parties will be left on the referee's decision, on which a new and complete judgment may be entered. The judgment should follow the decision, should be entitled in both actions and should embrace all the material points adjudicated as determined by the referee. Then one appeal and one case, with excep-

tions, will bring before the court of review the entire subject of litigation.

Recognizing the fact that the moving parties have not lost or waived their right of appeal, and that the court is bound to respect their claim for a review and to protect it to them, I am of opinion that an order to the effect above indicated should be granted. It is presumed that they have complied with the conditions of the general term order, if not they must yet do so.

The order must vacate the judgment entered in the cross-action September 17, 1868, and will require the prevailing party in the action, Simpson, to enter judgment on the decision of the referee (to be entitled in both actions) within twenty days, and in case of his neglect to do so, the moving parties in this motion must be at liberty themselves to enter it.

The right of appeal will follow such entry of judgment as matter of law, and the parties must have twenty days thereafter to make and serve a case with exceptions.

. If, by the general term order giving "leave to make the proper motion at special term," it was intended to open the case to be dealt with in a way to put it in condition to be heard as an entirety, holding in view the right of appeal, which still remained to the defeated parties, the order now granted will meet and answer such purpose. If, on the other hand, I have misunderstood the case and have erred in my conclusion, all will be set right on appeal from this order, which doubtless will be taken.

In thus vacating this judgment entered in 1868, I am not unmindful of the statute (2 R. S. 282, § 2), which provides that a judgment shall not be set aside for irregularity after the lapse of one year. But I do not regard this judgment as a mere irregularity. It stands in the way of a substantial right, and is subversive of it. In such case this statute does not apply. See remark of BRONSON, J. *Manufacturers', etc., Bank of Northern Liberties* v. *Boyd,* 3 Denio, 257–8; *Bonnell* v. *Henry,* 13 How. 142; *Dedericks* v. *Richley,* 19 Wend. 108; *Hallett* v. *Righters,* 13 How. 46. Nor is section 174 of the Code in the way of this proceeding.

My conclusions are, therefore, 1st. That the judgment in the original suit entered on the stipulation, was not intended to be a final judgment in the action, and was not so in point of fact; 2d. That the right of appeal, both by law and by the agreement of the parties embodied in the stipulation, remained to the close of the

trial and until the expiration of the term fixed by law for appealing after the entry of final judgment; 3d. That the defeated parties are entitled to have judgment entered on the decision of the referee, to embody all the points adjudicated, with a view to the bringing of an appeal therefrom; 4th. That there should be but one judgment entered on the referee's decision; and 5th. That the judgment entered in the cross-action, as a separate judgment in the case, is unauthorized and improper, as it leaves the record fragmentary and incomplete.

I have examined this case with a great degree of solicitude, and was disposed to terminate, if possible, without doing absolute violence to legal rights and the settled practice of the court, what seemed an almost endless strife, by denying the motion.

Here was a controversy over a bond and mortgage made nine years before I was born. The litigation commenced almost thirty years since, has outlived the attorneys and counsel originally employed in it by many years, and the case is now in the hands of those who, at its commencement, were unborn or were mere lads. Its continuance in court during so long a period seemed a reproach, and I was little inclined to favor further delay. But, on examination, I found that a right still remained to the defeated party, a right of review, ever held of the highest importance, not forfeited, lost or waived, a right which could not be struck down arbitrarily. It is, however, believed that the order now made will put the case in a condition for final disposition, without other than the necessary delays which must attend judicial proceedings.

*Ordered accordingly.*

From this order Simpson appealed; the appeal was argued at the general term of the third department in June, 1873, before PARKER, BOARDMAN and J. POTTER, JJ., and the order was unanimously affirmed on the above opinion.