JOHN B. SIMPSON, ADMINISTRATOR, ETC., OF GEORGE B. SIMPSON, DECEASED, RESPONDENT, *v.* ALEXANDER McKAY AND OTHERS, APPELLANTS.

ALEXANDER McKAY AND ROBERT McKAY, APPELLANTS, *v.* JOHN B. SIMPSON AS ADMINISTRATOR, ETC., AND GEORGE McKAY, AS ADMINISTRATOR, ETC., OF ANDREW McKAY, DECEASED, RESPONDENTS.

*Decision — after twenty-one years — not reversed on technical grounds — party seeking review must establish error — Declarations of former owner of personal property — incompetent as to assignee.*

After the expiration of twenty-one years from the making of a decision, the court will hesitate to reverse it for technical errors.

In such case, where the party seeking a review of such decision, has first alleged its making in his complaint, and then, on affidavits stating that he could prove the contrary of the facts therein found, obtains leave of the court to strike such allegations out of his complaint, the burden rests upon him to show it to be erroneous. (COUNTRYMAN, J., dissenting.)

The declarations of a former owner of personal property are incompetent evidence for any purpose as against all others except himself and his immediate representatives. (COUNTRYMAN, J.)

THE first action was brought in the late Court of Chancery for the foreclosure of a mortgage, and the principal defense was that the plaintiff's intestate was not the owner of it. Judgment directing an accounting and of foreclosure was directed, but no judgment or order was ever entered.

The second action was a cross suit brought to obtain the allowance of certain set-offs and payments upon the mortgage, the complaint therein alleging the decision made in the first action; and issue was joined therein. Thereafter a stipulation was made by the attorneys in both suits, and an order entered, that judgment should be entered in the first suit for the sum apparently due, "to stand as security," without prejudice to the continuing of that suit, so far as the accounting was concerned, and that both suits be heard and decided together.

The trial took place before a referee who rejected evidence offered by the McKays, to show that the plaintiff's intestate was not the owner of the mortgage. The McKays applied to Special Term for

a modification of the order entered on the stipulation, so as to refer to the referee the issue as to the assignment of the mortgage. The Special Term struck out the allegations of the complaint in the cross suit, averring that the General Term had decreed the foreclo- sure, and that the mortgage had been assigned to the plaintiff's intestate therein. The referee and parties thereafter acted upon the theory that the whole issues in each case were referred to the referee "to hear and determine." The referee affirmed the decision of the General Term on the main question, and rejected all the set- offs and payments which were attempted to be applied upon the judgment. From the judgment entered upon this report the McKays appealed. A very full statement of facts in this case appears in Judge COUNTRYMAN's dissenting opinion.

*E. W. Paige,* for the appellants.

*Henry Smith,* for the respondents.

LANDON, J.:

I am of opinion that the errors of the referee in the reception of evidence discussed by my brother COUNTRYMAN, were immate- rial for these reasons: It sufficiently appears from the opinion of Justice ALLEN, that, in 1853, the General Term decided upon the evidence taken in the original action, that Andrew McKay did transfer and deliver the bond and mortgage to George B. Simpson. That although no formal judgment can be proved to have been entered to that effect, the McKays, plaintiffs in the cross action, by their complaint, which they verified in 1855, only two years after the decision was made, and when they and their counsel must have remembered the fact, not only admitted, but alleged the fact to be, that such decision had been made, and manifestly brought their cross action partly because it had been made. And, although, in 1861, forty-two years after George B. Simpson's death, and upon discovering that such judgment could not be found, they obtained an order from the Special Term permitting them to strike such allegation from their complaint, they procured such order upon affidavit that they could prove that such transfer had not been made ; yet, under the circumstances, it seems to me just that such order should not be construed as opening the question of transfer further than to permit the McKays to make good their affirmation,

to wit: that they could disprove the transfer; thus putting the burden upon them to impeach the decision of the General Term, which, upon the evidence, they must be held not to have done.

After the lapse of so many years from the decision of that General Term, it seems but just that Simpson should be permitted to invoke the repose of time upon its conclusiveness and freedom from technical errors. The learned counsel for the McKays insists that in some way they should be permitted to review that decision, and that they have never had the opportunity afforded them, until this appeal, to do so. Be that as it may, it seems to me that when the McKays, in 1855, commenced their cross action and swore to their complaint, they were willing to accept that decision as a finality. If they have since changed their minds, the change is too late. To review a finding twenty-one years after it is made, and reverse it for technical errors, is of very doubtful propriety.

I advise an affirmance of the judgment.

COUNTRYMAN, J. (dissenting):

One-half of this action was originally commenced in the year 1843, to foreclose a mortgage of which the plaintiff's intestate claimed to be the owner as pledgee or assignee. The principal defense interposed was that the mortgage had never been transferred, and was still the property of the mortgagee therein named. It was finally brought to a hearing upon the pleadings and proofs, at a General Term, held in January, 1852; and the court, after full consideration, delivering an elaborate opinion, and holding that the plaintiff was the owner of the mortgage, directed the usual judgment of foreclosure, with a reference under special instructions to compute the amount due. Both parties seem to have been equally amazed and paralyzed by the decision, and no order or judgment has ever been entered in pursuance thereof. However, in April, 1855, the defendants, apparently unaware that the Code of Procedure had then been in operation several years, under which the pleadings in the old suit should have been amended, if necessary, to present any new issue, commenced the other half of this action, to obtain the allowance of certain additional set-offs and payments upon the mortgage. Strange as it may seem, this proceeding was acquiesced in by the plaintiff in the old suit, and

issues were joined therein, without objection, upon the merits. The new action was founded on the assumption that the decision in the old suit had finally disposed of the question of the ownership of the mortgage and established the right of the plaintiff's intestate therein to recover the amount due, and merely sought to reduce or extinguish the claim by payments or set-offs. Accordingly, in May, 1855, the attorneys made a stipulation in both suits, consenting that judgment might be entered in the foreclosure suit in favor of the plaintiff therein for the sum apparently due on the mortgage, with costs, " to stand as security," without prejudice to the continuation of that suit " so far as the accounting was concerned," and agreeing " to have both suits heard and decided together " by a referee, and whatever sum should be allowed on account of the claims for payments or set-offs, applied on the mortgage, with the right to the McKays to appeal from any judgment rendered in the suits. An order in both suits was subsequently entered in the General Term, in pursuance, and in all essential points following the language, of the stipulation; but no referee was named or appointed in the order, nor is there any other order of reference in the printed case. It is stated, however, preliminarily, that the " action came on for trial before D. M. Chadsey, Esq., the referee appointed to hear and determine the same," on the 16th day of April, 1860; and the action (both suits) has been tried and determined by the referee, with the consent of the parties. The referee, during the early part of the trial, very properly rejected evidence, offered by the McKays to show that the plaintiff's intestate was not the owner of the mortgage, holding that the question was not in issue before him under the pleadings and the foregoing stipulation and order of the General Term. In May, 1861, while the trial was progressing, the McKays, upon an application stating that they were embarrassed by such rulings and the reasons given for them, in their efforts to prove the real ownership of the mortgage, a matter not in issue on the reference, moved, at a Special Term, to amend the order of the General Term, made in May, 1855, and entered upon the stipulation of the parties, " so as to refer to the referee for hearing and decision, the issue in relation to the alleged assignment and hypothecation of the said mortgage;" and also to strike out certain portions of their adversary's plead-

ings, setting up the statute of limitations as a bar to their alleged payments and set-offs! The Special Term denied the relief desired, but did strike out an allegation of the complaint in the cross suit which had not been denied in the answer, averring that the General Term had decreed, in the foreclosure suit, that the mortgage had been assigned to the plaintiff's intestate therein; and the learned judge, in disposing of the motion, wrote an advisory opinion suggesting that the order of the General Term did not conform to the stipulation, in which he was clearly in error, and intimating that all the issues in both suits were really before the referee. The parties and the referee, with one accord, seem to have accepted and acted upon this advice; and during the remainder of the trial, which lasted several years, the referee sat in review of the General Term on the main issue involved in the foreclosure suit, as well as in hearing the other issues in the actions which had been ordered to be referred under the stipulation. The original decision of the General Term seems to have been practically abandoned, and the whole case, including the question of the ownership of the mortgage, has been considered and treated as referred to the referee " to hear and determine," and he has accordingly heard it and made his report, upon which judgment has finally been perfected, deciding the whole case *de novo* in favor of the original plaintiff, thus affirming the decision of the General Term on the main question, and rejecting all the alleged payments and set-offs which were sought to be applied on the mortgage. It should be stated in this connection, that the judgment was originally entered on the referee's report only in the cross suit, from which an appeal was taken to the General Term, which, in January, 1872, affirmed the judgment, holding that no errors had been committed relating to the issues in that suit, and declining to pass upon the other branch of the case as not before them. This judgment, however, was subsequently set aside and the case re-opened to allow a new judgment to be properly entered on the report in both suits as one action, which was finally done with the approval of the court. * The McKays have again appealed from this judgment, and now seek a reversal thereof for alleged errors committed on the trial, in the admission of evidence relating to the main issue of the ownership

* Simpson v. McKay, 3 Thomp. & Cook, 65.

of the mortgage. The question is thus presented, whether that issue was really before the referee, and is therefore now the subject of review. The case has been fully tried, on both sides, on the theory that all the issues, including the question of ownership, had been duly referred to the referee " to hear and determine," and the judgment from which this appeal is taken is wholly founded upon the referee's report, which contains his findings upon all these issues. No entry of record has ever been made of the original decision of the General Term in 1852, nor is there any evidence of that decision in the case, except the opinion written by Mr. Justice ALLEN, and the incidental statements and admissions contained in the pleadings and testimony. Even the judgment of 1855, which was entered " to stand as security," entirely ignored the decision of the court, and was founded on the stipulation of the parties. But that judgment, as has already been held in this case, is of no importance in determining their legal rights. * It is true that the written stipulation and order of 1855, contained in the printed case, properly construed, did not confer this power on the referee, nor did these papers even name the person who was to act as the referee. In view of the facts, however, that the case has been fully tried before a referee recognized as such by the parties, who has assumed the right without objection to hear and determine all the issues, and that the judgment itself purports to be wholly founded on his report, it must be presumed on this appeal, in the absence of countervailing evidence, that an order of reference to hear and determine all the issues has been made in both suits, and the judgment must stand or fall with the report on which alone it is founded. It can receive no sanction or support from a decision or direction of the General Term which has never been entered of record, and with which it does not purport to have any connection. If the referee has been acting without authority in the case, a motion should have been made upon that ground to set aside his report and the judgment founded thereon.

This appeal therefore brings up for review all the exceptions to rulings of the referee upon all the issues in the case. I shall decline, however, to reconsider any of the questions which have once been passed upon in the General Term. This disposes of all the

* Simpson v. McKay, 3 Thomp. & Cook, 65, 70.

exceptions relating to the issues in the cross suit, as these were over-ruled at the January Term 1872, as appears from the opinion of Mr. Justice PARKER delivered on that occasion. It also disposes of nearly all the exceptions relating to the issues in the foreclosure suit, as those were fully considered and overruled at the January Term 1852, as appears from the opinion of Mr. Justice ALLEN. There is, indeed, but one class of exceptions which do not seem to have been heretofore considered, and these relate to the admissibility of the declarations of Andrew McKay, the mortgagee, in favor of his assignee as against Alexander and Robert McKay, the present owners of the mortgaged premises, as devisees under the will of the mortgagor. The question arising upon these exceptions does not seem to have been raised or considered on any former occasion, and must, therefore, now be determined. Were such declarations competent evidence to prove the transfer of the mortgage to George B. Simpson, as against the owner of the mortgaged premises? Several witnesses were called on the trial; who were allowed under objections to testify to these declarations. Although Andrew McKay was himself examined as a witness at length, in reference to the alleged transfer and all the circumstances connected with the original transaction, no foundation was laid or attempted on his cross-examination for the introduction of these counter declarations, but they were invariably introduced as original evidence as against all the parties. This was clearly erroneous and indefensible. The rule has been too often asserted in this State to require discussion, that the declarations of a former owner of personal property are incompetent evidence for any purpose as against all others, except himself and his immediate representatives; and among other special applications of the rule, such declarations have been held inadmissible to prove the title of the assignee to the property. * The fact that Andrew was a party to the foreclosure suit, did not render his declarations admissible as against his co-defendants. †

* Brown v. Mailler, 12 N. Y., 118 ; Worrall v. Parmelee, 1 id., 519 ; Hurd v. West, 7 Cow., 753 ; Smith v. Webb, 1 Barb., Sup. C. R., 231 ; Booth v. Swezey, 8 N. Y., 276 ; Paige v. Cagwin, 7 Hill, 361 ; Foster v. Beals, 21 N. Y., 247 ; Tousley v. Barry, 16 id., 497.

† Simmons v. Sisson, 26 N. Y., 264 ; Lewis v. Woodworth, 2 id., 512 ; Ogden v. Peters, 15 Barb., 560 ; Hammon v. Huntley, 4 Cow., 493.

It will of course be understood that this rule does not apply to such testimony as that of the witness Helen Steele, who testified to an original interview between Andrew and the assignee, in reference to the transfer of the mortgage. As the objectionable evidence had a direct bearing on the leading issue in the case, it cannot be said that it did not have a controlling influence on the decision of the referee, and the judgment should therefore be reversed and a new trial granted. The order of reference should be discharged, and if a new reference be agreed upon, it should be an absolute one to hear and determine all the issues.

Present — BOOKES, P. J., LANDON and COUNTRYMAN, JJ.

Judgment affirmed, with costs.