GILLET, RECEIVER, &c., *against* PHILLIPS.

A transfer, made on behalf of a banking corporation by its cashier, of promissory notes exceeding $1000 in value, and which was not authorized by a previous resolution of its board of directors, is illegal. (1 *R. S.*, 591, § 8.)[1]

Such a transfer is void, as against a receiver of the corporation appointed after it was made, unless the person claiming under it is a purchaser for a valuable consideration and without notice.

Where the unauthorized transfer is to a director of the bank he is chargeable with notice.

Where the transfer is unauthorized and the purchaser has notice, he is not, in an action by the receiver of the corporation to avoid the sale and recover the property transferred or its proceeds, entitled to recoup or be allowed the consideration paid by him to the bank.

THE St. Lawrence Bank was organized in 1838, under and by virtue of the general banking law enacted in that year, to carry on the business of banking at Ogdensburgh. In December, 1841, the bank, pursuant to a resolution of

---

[1] Partially overruled, in *Leavitt* v. *Blatchford*, 17 N. Y. 521, where it is ruled, that banking corporations organized under the act of 1838, are not subject to the general laws relating to moneyed corporations, except so far as they have been incorporated in that statute.

its board of directors, stopped specie payments, and never afterwards resumed them, and it was then and ever afterwards insolvent. In February, 1843, the plaintiff was appointed receiver of the bank, by an order of the court of chancery, on the application of the bank commissioners; and in October following, he, as such receiver, filed the bill in this cause in the late court of chancery, to set aside a sale and transfer made by the cashier of the bank on its behalf to the defendant in April, 1842, of three promissory notes owned by it. The three notes were each dated January 1st, 1842, and were each for the sum of $672, with interest after six months, and were payable respectively in twelve, fifteen and eighteen months from date. The defendant was a stockholder in, and a director of the bank when he purchased the notes; and he only paid for them $1200. The cashier sold and transferred the notes to raise funds to redeem the circulating notes of the bank. The other material facts are sufficiently stated in the opinion of the court.

The cause having been transferred, under the constitution of 1846, to the supreme court, was heard at a special term held by Mr. Justice Hand, in St. Lawrence county. A decree was made by him declaring the sale and transfer of the notes to the defendant void, and that he was liable to account for their proceeds to the plaintiff; but the decree further provided that the defendant was entitled to be allowed on the accounting, the $1200 advanced by him to the bank on the purchase of the notes, with interest thereon; and by it, the defendant was adjudged to pay to the plaintiff the amount of their value or proceeds, less the $1200 and interest. This decree was affirmed at a general term of the supreme court, in the 4th district. The plaintiff appealed to this court.

*A. Mann, Jr.,* for the appellant.

*W. C. Brown,* for the respondent.

GARDINER, C. J. There is no necessity of going beyond the minutes of the bank to ascertain its condition at the time when the transfer of the notes in controversy was made to the defendant. Its insolvency was as plainly written in the books of the institution as though the fact had been there recorded in so many words. It appears that in December, 1841, the bank suspended payment by resolution. On the same day all its effects were transferred to the cashier in trust, to indemnify some or all of its directors for responsibilities by them incurred for the corporation. On the 10th of the following month another assignment of bonds and mortgages, then in the Canal Bank, was made to secure liabilities; and on the 13th, the exigencies of the institution were such as to call for a meeting of the stockholders. At this meeting the defendant was present, and, as one of the committee for that purpose, reported certain resolutions, which were adopted; which, in substance, affirmed the embarrassed situation of the bank, and recommended to its officers to reduce its circulation and liabilities, and restore it to a condition in which it might resume its business. The proof is, that the corporation transacted no business after its suspension in December, 1841, except to wind up its affairs, until it went into the hands of a receiver. So much for the fact of insolvency. Under these circumstances, in April, 1842, the defendant, who was then, and had been prior to and during the time of the transactions above mentioned, a director, purchased of the cashier, assuming to contract for the corporation, the three notes in question, amounting to over $2000, at a discount of forty per cent, which were then and there transferred to him accordingly. The notes were part of the assets of the bank; were deemed good and available by the parties, and, for aught that appears, were so.

By the 8th section of the title of the Revised Statutes, "*Of Moneyed Corporations*" (1 *R. S.*, 592), it is declared that no assignment or transfer, not authorized by a previ-

ous resolution of its board of directors, shall be made by such corporation of any of its effects exceeding in value $1000. This section is not to apply to the issuing of promissory-notes or other evidences of debt by its officers in the transaction of its ordinary business, nor to payments in specie or other current money, or in bank bills ; nor shall it be construed to render void any such asssignment or transfer in the hands of a purchaser for valuable considera-tion and without notice.

The transfer in this case, it will be perceived, falls directly within the prohibition of the first clause of this section. The defendant does not allege in his answer, that the sale of the notes was authorized by a previous resolu-tion of the board of directors ; and no such resolution is proved to have existed. On the contrary, he negatives any authority of the kind, by insisting that the sale was made " under the general advice and direction of the board of directors and the stockholders, to get up the circulation of the bank in the best and most practicable manner." Nor does the defendant claim the benefit of any of the exceptions contained in the 8th section, except the last one. To this he is not entitled, for he was in no sense a purchaser without notice. Want of notice is not available as a defence to a vendee, who, at the time of the purchase, was a direc-tor in the corporation whose property was the subject of the sale. By accepting that office, he assumed a duty to the stockholders and creditors of the bank, to inform him-self of what would appear by an inspection of the books of the institution of which he was one of the ostensible managers; and he cannot urge a want of notice arising from a neglect of duty, in justification of a transaction in his own case, which the law presumes unauthorized and illegal. In this instance, the transfer was made by one director, in behalf of the corporation, to another; and both were charge-able with knowledge, that the contract which assumed to divest the corporation of its assets was a violation of the

8th section, in consequence of the omission of the board to pass the resolution necessary to give it validity.

But the defendant in this case is affected with something more than constructive notice. He was a director of a bank at the time actually insolvent, and which, to his knowledge, was not only embarrassed but had suspended payment for more than four months; and which, he was informed by its cashier, as he alleges in his answer, was unable from its assets to raise the sum of $2000 to prevent the sacrifice of its circulating notes then pledged to the American Exchange Bank. No one can read the answer of the defendant, without a conviction that he must have been aware of the probable insolvency of this corporation, unless he closed his eyes to evidence that should have satisfied any man of common intelligence. He must have known, that in this condition, or in contemplation of it, the bank could make no transfer of its property or any payment, with a view to prefer one creditor to another; and whether in this condition or not, a transfer of its assets, exceeding $1000, was prohibited without a previous resolution of the directors. (1 *R. S.*, 591, § 8, 9.) He knew that he had not aided in the passage of any resolution, or been consulted as director upon that subject. Every presumption was against its existence in the embarrassed condition of the institution. Although negotiating with the fiscal officer of the bank, he made no inquiry of him or others. He was not misled; but was informed, as he states in his answer, by the cashier, at the time of the purchase, that "the board of directors had authorized and directed him to take circulating notes of the bank in payment of debts due to it." The authority thus claimed was a virtual disclaimer of any other. and excluded any presumption of a previous resolution for the transfer of the notes in controversy. Under these circumstances, which were equivalent to actual notice of want of authority in the agent of the bank, the defendant made a purchase of the notes at a

discount, which, of itself, indicated the extreme necessity, if not the hopeless condition of the corporation.

The object of the defendant, as he alleges, was to enable the corporation to pay a debt due the American Exchange Bank, and thereby redeem its circulating notes pledged to that institution. It is very questionable whether the bank could at that time make that payment. If the object had been to give a preference to a particular creditor, the payment was forbidden by the 9th section of the act mentioned. Now, when a moneyed corporation is insolvent, in such a sense that all its debts cannot probably be discharged from its assets, the payment of any one creditor in full is a preference within the meaning of the statute. That the creditor holds security will not necessarily legalize the payment, although that fact might be evidence upon the question of intent, more or less cogent depending upon the nature and amount of that security. Upon the defendant's own statement, therefore, he made a purchase, prohibited by the 8th section, to enable an insolvent corporation to make a payment *prima facie* forbidden by the 9th. It is enough for the present case, that he voluntarily aided in the commission of an act expressly prohibited by the statute.

The contract was not only unauthorized but illegal. No action could be sustained upon it, if executory, in his favor, nor to set it aside, if executed. Nor could it become the foundation of an implied assumpsit in behalf of the offending party. (*Broom's Legal Maxims*, 349; *Smith's Law of Contracts*, 121, 187–190; *Comyn on Cont.*, 30; *Perkins* v. *Savage*, 15 *Wend.* 412; 2 *H. Bl.*, 379; 3 *Taunton*, 6; *Nellis* v. *Clark*, 4 *Hill*, 426; *Leavitt* v. *Palmer*, 3 *Comst.*, 27, *and cases there cited.*)

The agreement is equally inoperative to sustain a recoupment or set-off, which are in the nature of cross-actions, or for an equitable lien for the price paid. The money was paid by the defendant to consummate an unlawful bargain. To

3 KERN.—8

allow a party to recover it back under these circumstances, would be to encourage a violation of the law, by assuring the offender of indemnity if the contract was rescinded by creditors, with the chance for a successful speculation if it was not. It is upon this principle that equity will not enforce contribution, where there has been a fraudulent alienation of the trust estate. (*Hill on Trustees*, 521.)

The cases of *Hawley* v. *Mancius* (7 *J. Ch. R.*, 174), and *Evertson* v. *Tappen* (5 *id.*, 497), cited by the learned judge who pronounced the opinion of the supreme court, do not seem to me to apply to this case; indeed, they were cited to sustain a proposition founded upon the supposed good faith of the defendant, which I think is negatived by the evidence. In both the cases cited, the *cestui que trust* affirmed the acts of the trustee; and in both, the chancellor decided that the purchases were made under the trusts respectively. In this case the receiver, as the representative of the creditors, repudiates the sale and demands the notes as the property of the bank. The defendant sets up a counter claim, arising out of his own illegal contract, for money paid in pursuance of it. This is resisted but it has been allowed by the court below. The distinction between the present case and those cited is too apparent to require comment.

An expression in the testimony of the cashier is referred to,—"that the stockholders passed a resolution authorizing him to take up the circulation in this way; and the directors authorized witness to do so,"—as having some bearing on the subject. The witness, after this statement, immediately proceeded to read the resolutions from the record, and concluded by saying he knew of no other. Among those resolutions is one passed by the stockholders in January, 1842, and the only one that there is any pretense was ever adopted. That resolution speaks for itself, and is a recommendation to the officers of the institution "to proceed in the collection of the debts due and to become due, and in the settlement and reduction of its circulation and

liabilities." This was sound advice, but gives no countenance to a transfer of the assets of the bank before due, at a discount of forty per cent, or in any other way. But the stockholders could no more confer an authority than an assemblage convened at a town meeting. It is sufficient that they did not assume to do it. The directors probably intended to follow the advice thus given; and the cashier accordingly informed the defendant that they "authorized him to take up the circulating notes of the bank in payment of debts due it." There was, then, no semblance of authority for the transfer. The supreme court pronounced the transaction void; but in my opinion, they erred in allowing the defendant the money paid by him on the purchase, and in granting costs.

The judgment should therefore be reversed, and a judgment entered in favor of the receiver for the value of the notes, or the money collected upon them by the defendant, with costs in the court below, but not in this court.

All the judges, except HAND, J. concurred in the foregoing opinion.

Judgment accordingly.