DANIEL PRATT AND CHARLES S. SYMONDS, as
ASSIGNEES, ETC., RESPONDENTS, v. NATHAN P. EATON
AND OTHERS, APPELLANTS.

*Chapter* 816 *of* 1868 — *a corporation created under, cannot discount paper —
assignees in bankruptcy of such corporation, cannot recover money paid for such
paper — rights of a receiver.*

This action was brought by the plaintiffs, as assignees in bankruptcy of a safe
deposit company, incorporated under chapter 816 of 1868, to foreclose a mort-
gage given by the defendant Eaton and wife, as collateral to a bond executed
by him to secure any amount that might, at any time, be due from him to the
company. At the time the company was adjudged a bankrupt, Eaton was
indebted to it on notes made by him and discounted by it at an office of discount
and deposit, kept by it in the city of Syracuse, where it carried on a large busi-
ness in discounting notes.

*Held,* that the discounting of the notes by the company was a violation of the
restraining acts of this State, and vitiated the whole transaction, preventing a
recovery of the money received by Eaton, as well as an action upon the notes
themselves.

That, as the debt could not be collected, the mortgage collateral to it could not
be enforced.

That the plaintiffs, as assignees in bankruptcy, stood in no better position than the
corporation itself.

*Quære,* whether the money could have been recovered by a receiver of the cor-
poration, appointed by a court of general equity jurisdiction.

APPEAL from a judgment in favor of the plaintiff, entered upon
the report of a referee in an action to foreclose a mortgage.

*G. D. Cowles* and *Wm. C. Ruger,* for the appellants.

*D. Pratt,* for the respondents.

SMITH, J.:

The plaintiffs are the assignees in bankruptcy of " The People's
Safe Deposit and Savings Institution of the State of New York,"
a corporation organized under the provisions of chap. 816 of the
Laws of 1868 (vol. 2, p. 1839). The mortgage, for the foreclosure
of which this action was instituted, was executed by the defend-
ants Eaton and his wife, together with a bond of Eaton to which
it was collateral, to Patrick Lynch, in trust for the corporation,

to secure it for any indebtedness it might hold against Eaton, "upon or by reason of any promissory note, bill of exchange, check, overdraft or otherwise." At the time when the corporation was adjudged a bankrupt, it held four promissory notes made by Eaton, for the amount of which, being $950 besides interest, the plaintiffs claim the right to enforce the lien created by the mortgage.

The defence is, that the notes were discounted by the corporation in violation of law, and it is insisted that not only the notes, but also the loans evidenced by them, were void. The fact that the notes were discounted was admitted by the plaintiffs, as was also the fact that the corporation from its organization to its failure, and during the time when the notes were discounted, kept an office of discount and deposit in the city of Syracuse, and carried on a large business in the discount of notes and other commercial paper. By the terms of the act creating it, the corporation had power, among other things, to receive money on deposit, and to loan money on real estate security. There is nothing, however, in the language of the act to indicate that the corporation was vested with authority to discount notes. It was not incorporated for banking purposes expressly, and its charter is such that the power of discounting notes cannot be implied. By the fourteenth section of the charter, the corporation was subjected to the liabilities and restrictions contained in part I, chapter 18, title 3 of the Revised Statutes, the fourth section of which title provides, that "no corporation created, or to be created, and not expressly incorporated for banking purposes, shall by any implication or construction, be deemed to possess the power of discounting bills, notes or other evidences of debt," etc. (1 R. S. [Edm. ed.], p. 600.) The corporation was also subject to the provisions of the statute known as the "restraining act," which, among other things, by its third section prohibits incorporated companies, not authorized by law, from making discounts, etc., and declares void all notes or other securities given to secure the payment of any money loaned or discounted contrary to the provisions of the third section. (1 R. S. [Edm. ed.], p. 712, §§ 3, 5.) There seems to be no reason to doubt the soundness of the defendants' position that the corporation not only had no power to discount notes, but that, as

it was prohibited by law from doing so, the notes given by Eaton to secure the payment of money discounted were, for that reason, void.

But it is contended, on the part of the plaintiffs, that notwithstanding the notes are void, the loan was within the powers of the corporation and was valid, and they, as the assignees of the insolvent corporation and the trustees of its creditors and stockholders, may compel Eaton to pay back the money which the officers of the corporation lent to him upon the notes thus discounted. The cases known as the Utica Insurance Company cases (*Utica Ins. Co.* v. *Scott*, 19 Johns., 1; *Same* v. *Kip*, 8 Cow., 20; *Same* v. *Caldwell*, 3 Wend., 296; *Same* v. *Bloodgood*, 4 id., 653) are cited by the respondents' counsel in support of the position, that even if the corporation were suing in its own name, it might recover the money lent, although the notes are void. But the soundness of those decisions has been repeatedly questioned, inasmuch as they permitted the violator of the law to recover upon a contract constituting that violation. (*New Hope Co.* v. *Poughkeepsie Silk Co.*, 25 Wend., 650; *Tracy* v. *Talmage*, 14 N. Y., 189; *Curtis* v. *Leavitt*, 15 id., 98; *In re Jaycox* v. *Green*, bankrupts, MS. op. of Hunt, J., U. S. Circuit Court, North. Dist. of N. Y.) And the better opinion seems to be, that if the corporation were suing in its own name, the fact that it was *particeps criminis* would prevent its recovery of the money parted with in the illegal transaction, on grounds of public policy. (*New York Trust and Loan Company* v. *Helmer*, 12 Hun, 35.) This is not upon the ground merely that the transaction was *ultra vires*, but that it was unlawful. The distinction between want of power and illegality is an answer to the argument derived from the cases which hold that when the question is simply one of capacity to contract, a party who has had the benefit of the contract cannot, in an action upon it, question its validity. Among them are *The Steam Navigation Company* v. *Weed* (17 Barb., 378), and the cases there cited by Parker, J.; *Whitney Arms Co.* v. *Barlow* (63 N. Y., 62); *Bushnell* v. *Chautauqua County Bank* (10 Hun, 378), and many others that might be named.

It is contended by the respondents' counsel that the plaintiffs, as the assignees of the bankrupt corporation, suing in behalf of its creditors who are innocent parties, are in a better position

than the corporation itself, in respect to the claim in suit, and that, although the notes are void, the assignees can recover the money loaned, to pay the debts of the corporation. An analogy is sought to be traced between the position of the assignees and that of a receiver of an insolvent corporation, appointed by a court having general equity jurisdiction. It has been held in this State that in such a case, although the proceedings are taken under a statute of the State, the court in appointing the receiver acts as one of general jurisdiction, and not as exercising a special statutory power. (*Bangs* v. *Duckinfield*, 18 N. Y., 592.) And a receiver so appointed may not only treat as void all acts done in fraud of creditors, full authority to do so being given by the act of 1858 (Laws 1858, chap. 314), but he may sue for all moneys due to the insolvent corporation, and for all its property improperly disposed of in violation of the rights of either creditors or stockholders, for the purpose of paying the debts and dividing the surplus, if any, among the stockholders. (*Nathan* v. *Whitlock*, 9 Paige, 152; *Osgood et al.* v. *Laytin et al.*, 48 Barb., 463; *S. C.*, affirmed, 3 Keyes, 521.) So, too, an illegal transfer of the property of the corporation, by its officers, may be avoided by the receiver, unless the person claiming under it is a purchaser for value and without notice. (*Gillet, Receiver*, v. *Phillips*, 13 N. Y., 114.) There is no case, however, that we are aware of, holding that a receiver may recover in such a case as the one before us, and it is not necessary for us to decide the point. The case of an assignee in bankruptcy is not altogether analogous to that of a receiver appointed by a court of general equity jurisdiction. The circuit and district courts of the United States have only such limited equity jurisdiction, as is conferred upon them by positive law. And the powers of an assignee in bankruptcy appointed under the late bankrupt act were only those conferred by statute. Such assignee had no right of action to collect the assets of the bankrupt represented by him, other than the bankrupt himself would have had, except that he might have maintained an action to recover property conveyed by the bankrupt in fraud of his creditors. (U. S. R. S., §§ 5046, 5047; Laws of N. Y., 1858, chap. 314; *Southard* v. *Benner*, 72 N. Y., 424.) The present action is not one of that description.

It has been held by the federal courts, in some instances, that the question how a corporation should invest its funds is a question between itself and the sovereignty that created it, and not between the corporation and the borrower. (*The Mut. Life Ins. Co. of N. Y.* v. *Wilcox* [U. S. Dist. Ct., N. Dist. of Ill.], 7 N. Y. W. Dig., p. 13; see, also, *The Union National Bank* v. *Matthews*, 19 Alb. L. J., 132.) The application of that principle to cases like the present one, while it would preserve the policy of the restraining acts, would also permit a recovery in the present case for the money loaned. But we do not understand it to be the law of the courts of this State. On the contrary, our Court of Appeals has recently held in a contest between the holders of separate mortgages, respecting the priority of lien, that under the provisions of the national banking act, which were construed to prohibit national banks from taking mortgages on real estate, except for debts previously contracted, a mortgage given to a national bank to secure future indebtedness is void. The decision proceeded upon the ground that the contract, being in violation of the statute, was void, and the courts will not enforce it. We understand the case to be in conflict with that of *The Union National Bank* v. *Matthews* (*supra*). In that case the Supreme Court of the United States held that while a national bank is prohibited by law from loaning money on real estate, yet if it does make a loan on such security the security is not void, but may be enforced. Mr. Justice SWAYNE, delivering the opinion of the court, said : " We cannot believe it was meant that stockholders, and, perhaps, depositors and other creditors, should be punished and the borrower rewarded, by giving success to this defence whenever the offensive fact shall occur. The impending danger of a judgment of ouster and dissolution was, we think, the check, and none other, contemplated by congress." Were we at liberty to treat the question as an open one, we would be inclined to apply the rule there adopted to the present case, but we conceive ourselves bound to follow the opposite rule laid down by the court of last resort in this State.

The bond and mortgage of Eaton are merely collateral to the notes, and the illegality of the contract is a defence to them also, so far as it is sought to enforce them in this action.

In any view we can take of the case we are forced to the conclusion that the policy of the restraining acts, as construed by the courts of this State, requires us to hold that the discounting of the notes was illegal ; that the illegality vitiated the entire transaction, and that no recovery can be had upon it.

The judgment should be reversed, and, as there is no reason to suppose that the facts of the case would be changed materially on a second trial, judgment should be ordered for the defendants, with costs to be paid by the plaintiffs out of any assets in their hands applicable to the purpose.

MULLIN, P. J., and TALCOTT, J., concurred.

Judgment reversed, and judgment ordered for the defendants, with costs.