HOBART F. ATKINSON, as Receiver, etc., Respondent, *v.* THE ROCHESTER PRINTING COMPANY, Appellant.

This action was brought by plaintiff, as receiver of an insolvent state bank, to recover the amount of certain bills of exchange alleged to have been transferred by the bank to defendant in violation of the provisions of the act of 1882 (§§ 186, 187, chap. 409, Laws of 1882), which prohibits a conveyance, assignment or transfer by a bank, not authorized by a previous resolution of its board of directors, of property exceeding in value $1,000, except in the transaction of its ordinary business (§ 186), and also prohibits giving a preference to creditors in case of insolvency and requires the creditor so given a preference to account for the money or property received to the bank's creditors or stockholders or their trustees    The following facts appeared : On December 16, 1882, the said bank was, to the knowledge of its president and cashier, insolvent. It continued business, paying all demands until the close of busi-

ness on December nineteenth, when it stopped payment. At a meeting of its directors held that evening, at which its cashier was present, it was resolved that proceedings be commenced for the appointment of a receiver. On December sixteenth the bank discounted for defendant promissory notes and gave it credit for the avails, and on December eighteenth and nineteenth it received cash deposits. At the close of business December nineteenth there was a balance of $3,004.22 to defend-ant's credit. On December twentieth, about an hour before the usual time of opening the bank for business, defendant's secretary went to the bank at the request of its cashier and received from him six bills of exchange aggregating $3,180,32, the largest being $983.63, giving defendant's check for the amount, dated December nineteenth; the cashier entered the trans-action in the books of the bank under that date. The apparent overdraft of $79.31 defendant paid at the request of plaintiff, who was then ignorant of the above facts. Having learned of them he made demand for the full amount of the bills. *Held,* that, as the aggregate amount of the bills trans ferred exceeded in value $1,000, the transfer was prohibited, notwith-standing no one of them was of that value; that, as defendant was not a purchaser for value and the transaction was not in the usual course of business, it was illegal without regard to defendant's intent or whether it knew the bank was insolvent; also, that, although the reception of the deposits from defendant was a fraud, and as between it and the bank the latter acquired no title to them, and they might have been recovered from the bank or its receiver if they could have been identified or their avails traced, yet the transaction in question was not a restoration or restitution by the wrong-doer, but was a compensation for the fraud, which, in the case of an insolvent bank, is prohibited by statute; that the fact defendant became a creditor through the fraud of the bank officers, and, so, the bank was a trustee, *ex maleficio,* gave defendant no right to a preference over other creditors; and that the transaction between defendant and the receiver was not a settlement between the parties.

Reported below, 43 Hun, 167.

(Argued March 13, 1889; decided April 23, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of January, 1887, which modified, and affirmed as modified, a judgment in favor of plaintiff, entered upon a verdict directed by the court and affirmed an order denying a motion for a new trial.

The nature of the action and the facts are sufficiently stated in the opinion.

*John Van Voorhis* for appellant. It was error to refuse to submit the question of intent to the jury. (*Hanan* v. *Fisher*, 1 Cowp. 177.) The statute makes the question depend upon what was passing in the minds of the officers of the company when the payment was made. (*Paulding* v. *Crome Steel Co.*, 94 N. Y. 341.) Where one has been induced to part with property by the fraud of an officer of the bank, the party defrauded may, upon discovery of the fraud, rescind the contract and recover the property, or the proceeds thereof, unless it has come to the possession of a *bona fide* holder. (*Cragie* v. *Hadley*, 99 N. Y. 131; *People* v. *City Bank*, 96 id. 32; *National Bank* v. *Ins. Co.*, 104 U. S. 54; *Met. Nat. Bank* v. *Loyd*, 90 N. Y. 530; *Dows* v. *Kidder*, 84 id. 121; *Matter of Le Blanc*, 14 Hun, 8; 75 N. Y. 598; *Van Allen* v. *Am. Nat. Bank*, 52 id. 1, 7; *McLean* v. *State Bank of Syracuse*, BLATCHFORD, J., U. S. C. C.) The bank having obtained the defendant's money by fraud, they hold these moneys as the defendant's trustee. The relation, therefore, existed between the defendant and the bank of trustee and *cestui que trust.* The defendant was entitled to be first paid before the general creditors. (*People* v. *City Bank of Rochester*, 96 N. Y. 32; *Libby* v. *Hopkins*, 104 U. S. 303; *In re Le Blanc*, 14 Hun, 8; 75 N. Y. 598; *Van Allen* v. *Am. Nat. Bank*, 52 N. Y. 1; *Dows* v. *Kidder*, 84 id. 121; *Frith* v. *Cartland*, 2 H. & M. 417; *Pennell* v. *Deffell*, 4 De G. & M. G. 372; *In re Knatchell* v. *Hallett*, 1 L. R., 13 Ch. Div. 696; *National Bank* v. *Ins. Co.*, 104 U. S. 54; *McLeod* v. *Evans*, 28 N. W. Rep. 173; *F. and M. Nat. Bank* v. *King*, 57 Pa. St. 202; *Peek* v. *Ellicott*, 30 Kan. 156.) The defendant pleaded and proved an account stated and a payment of the balance, and it was error to take this question from the jury. (*Lockwood* v. *Thorn*, 11 N. Y. 170; *Toland* v. *Sprague*, 12 Pet. 300–334; *Murray* v. *Toland*, 3 Johns. Ch. 569; *Weed* v. *Small*, 7 Paige, 573; *Leacraft* v. *Dewey*, 15 Wend. 83; *Stoughton* v. *Lynch*, 2 Johns. Ch. 209; *Colburn* v. *Lansing*, 46 Barb. 37; *Hutchinson* v. *Bank of Troy*, 48 id. 302; *Dean* v. *Van Nostrand*, 23 Week. Dig. 97; *Manhattan Co.*

v. *Phillips*, 53 Super. Ct. [J. & S.] 84.)   The receiver is the
representative of the bank and, like an assignee in bankruptcy,
is bound by his acts and contracts the same as if made by the
bank before its failure.   (*Von Sachs* v. *Kretz*, 72 N. Y. 548;
*Paige* v. *Cagwin*, 7 Hill, 361; *Williams* v. *Chapman*, 10
Conn. 8.)   The banking code should be construed strictly, so
far as its provisions are penal in their nature, or are innova-
tions upon the common law.   (*Crocker* v. *Whitney*, 71 N. Y.
161; *Landers* v. *Frank. St. M. E. Church*, 97 id. 119.)

*Arthur C. Smith* for respondent.   The transfer not having
been authorized by a previous resolution of the board of
directors, and the amount exceeding $1,000 in value, the con
veyance was void, and plaintiff has made out a clear case
under sections 186 and 187 of chapter 409 of the Laws of 1882,
which are re-enactments of sections 8 and 9 of article 1, title 2,
chapter 18, part 1 of the Revised Statutes.   (*Furniss* v. *Sher-
wood*, 3 Sandf. 521; *Gillet* v. *Phillips*, 13 N. Y. 114; *Smith*
v. *Hall*, 5 Bosw. 319; Lawson on Presump. Ev. 262; *Price* v.
*Nat. Security Bk.*, 22 Fed. Rep. 697.)   Ignorance of the
insolvency of the bank on the part of the defendant, or absence
of intent to obtain a preference are of no consequence.
(*Brouwer* v. *Harbeck*, 9 N. Y. 589.)   The defendant having
received the drafts in payment of a pre-existing debt, could
not be a *bona fide* holder of the property for value. (*Stalker* v.
*McDonald*, 6 Hill, 93; *Schroeder* v. *Gurney*, 10 Hun, 416;
*State of Tennessee* v. *Davis*, 50 How. Pr. 447.)   The title to
the money and paper deposited by the defendant upon the
sixteenth, eighteenth and nineteenth passed to the bank.
(*Met. Nat. Bk.* v. *Loyd*, 25 Hun, 101; 90 N. Y. 530.)   There
was no settlement of any differences between plaintiff and
defendant, nor any pretense of a release or other acquittance
from the plaintiff.   (*Newall* v. *Smith*, 53 Conn. 72.)

FOLLETT, Ch. J. The City Bank of Rochester was incorpo-
rated under the general banking act of this state.   As early as
December 16, 1882, it became insolvent, which fact the presi-
dent and cashier well knew.   The bank continued business,

paying all demands until the close of business on the nineteenth of December, when it stopped payment. At a meeting of its directors held in the evening of that day, at which the cashier was present, it was resolved that an action be begun in the Supreme Court, and an application made in the action for the appointment of a receiver, and that David Hayes, an attorney, be authorized to appear for the bank in the action and consent to the receivership. December twenty-third a judgment was entered in this action dissolving the corporation, because of its insolvency, and appointing a permanent receiver with the usual powers of receivers in such cases.

For sometime before December 20, 1882, the defendant had kept an account with the bank, which was overdrawn on the fifteenth of December, but to what amount does not appear. December sixteenth the bank discounted for the defendant promissory notes made by its customers and credited its account with the avails —

| | | |
|---|---:|---:|
| Amounting to............................... | $5, | 598 05 |
| December 18. Cash deposited................. | | 173 84 |
| December 19. Cash deposited................. | 1, | 236 94 |
| | $7, | 008 83 |

At the close of business, December nineteenth, defendant's checks had been paid and charged to the account, so that the balance standing to defendant's credit was $3,004.22.

It was the custom to open the bank for business at ten o'clock. About nine o'clock in the morning of December twentieth defendant's secretary went to the bank, in response to the request of the cashier of the bank, and received from him six bills of exchange, aggregating $3,180.32, the largest one being for $983.63, and known in this litigation as the Loomis & Woodworth draft. Defendant's secretary returned to its office and drew a check for the amount of the bills, dated it December nineteenth, returned to the bank and delivered it to the cashier, who entered the transaction in the books of the bank under the date of December nineteenth. It is

said that this check overdrew the defendant's account by $79.31. There seems to be an unexplained discrepancy in the amounts given, but it does not affect the principle involved. February 9, 1883, the defendant, upon the request of the receiver, paid this alleged balance, $79.31. Subsequently the receiver learned the facts above recited, and brought this action to recover the amount of the bills, upon the ground that they were delivered by the cashier and received by the defendant in violation of sections 186 and 187 of chapter 409 of the Laws of 1882.

The defendant insisted that the transfer was not prohibited by section 186, because no one of the bills was of the value of $1,000; that receiving deposits from the defendant when the officers of the bank knew that it was insolvent, was a fraud; that the bank became a trustee *ex maleficio* of the fund, and that the cashier had the right to make restitution; and that, February 9, 1883, the parties to this action mutually stated and settled the account; and the defendant paid, and the plaintiff received $79.31 in full settlement and discharge of all liability of the one to the other.

At the close of the evidence the defendant asked to go to the jury upon the following questions: (1.) Upon all of the questions of fact in the case. (2.) Whether the defendant was a *bona fide* holder of the bills for value? (3.) Whether the bank on and after December 16, 1882, was insolvent, and its officers expecting its immediate failure, and whether the receipt of the defendant's deposits on that and the subsequent days was not a fraud which prevented the bank from obtaining title to the deposits? (4.) Whether the account was stated and settled. These requests were refused, and the trial court directed a verdict for the amount of the bills, with interest, upon which a judgment was entered, which was modified by the General Term by deducting the Loomis & Woodworth draft for $983.63, which the defendant had been unable to collect; and, as so modified, the judgment was affirmed. From this judgment the defendant appeals. The sections under which this action was brought provide:

"§ 186. No conveyance, assignment or transfer not authorized by a previous resolution of its board of directors shall be made by any such corporation of any of its real estate, or any of its effects, exceeding the value of one thousand dollars; but this section shall not apply to the issuing of promissory notes, or other evidences of debt, by the officers of the company in the transaction of its ordinary business, nor to payments in specie or other current money, or in bank bills made by such officers; nor shall it be construed to render void any conveyance, assignment or transfer in the hands of the purchaser, for a valuable consideration, and without notice."

"§ 187. No such conveyance, assignment or transfer, nor any payment made, judgment suffered, lien created or security given by any such corporation when insolvent, or in contemplation of insolvency, with the intent of giving a preference to any particular creditor over other creditors of the company, shall be valid in law; and every person receiving by means of any such conveyance, assignment, transfer, lien, security or payment, any of the effects of the corporation, shall be bound to account therefor to its creditors or stockholders, or their trustees, as the case shall require.   *   *   *"

It is conceded that when the six bills of exchange were transferred, and for several days before, the bank was insolvent, which fact was well known to the president and cashier, indeed, a resolution had passed the board of directors that it should be placed at once in the hands of a receiver. It is also conceded that the transfer of the six bills had not been authorized by a previous resolution of the board of directors. The aggregate amount of the bills transferred exceeding in value $1,000, the transfer was prohibited by section 186 above quoted, although no one of the bills was of that value. (*Gillet* v. *Phillips*, 13 N. Y. 114; *Smith* v. *Hall*, 5 Bosw. 319.) The defendant not being a purchaser for a valuable consideration, and the transaction not being within the usual course of business, the transfer was illegal under section 186 without regard to defendant's intent, or whether it knew that the bank was insolvent. (*Brouwer* v. *Harbeck*, 9 N. Y. 589.)

Whether the defendant was a *bona fide* purchaser of the six bills of exchange was not a question of fact for the jury. Nothing was paid for them, nor anything of value parted with, and the circumstances under which they were delivered admit of but a single conclusion, *i. e.*, that they were given and received with the intent of both parties to the transaction of preferring the demand of the defendant. Had the jury found for the defendant upon this issue, the court would have been compelled to set aside the verdict.

It was quite unnecessary to inquire of the jury whether the reception of the deposits from the defendant was a fraud, because the law so declares it. (Penal Code, § 601 ; *Cragie* v. *Hadley*, 99 N. Y. 131.) As between the defendant and the bank, it acquired no title to the notes and money deposited, and they might have been recovered from the bank, or its receiver, if they could have been identified or their avails traced into any fund or security. (*Cavin* v. *Gleason*, 105 N. Y. 256.) But the six bills received by the defendant never belonged to it ; and it is not asserted that they were, in whole or in part, the proceeds of the deposits made by the defendant. The transaction was not a restoration or restitution by the wrong-doer, but was compensation by the wrong-doer for the fraud which had been perpetrated, which, in the case of an insolvent bank, is prohibited by the statute. The fact that the defendant became a creditor of the insolvent bank through the fraud of its officers, and the bank a trustee *ex maleficio*, gave the defendant no right to a preference over other creditors unless it could trace and recover its property. It was said in the case last cited : "It is clear, we think, that upon an accounting in bankruptcy or insolvency, a trust creditor is not entitled to a preference over general creditors of the insolvent, merely on the ground of the nature of his claim, that is, that he is a trust creditor as distinguished from a general creditor. We know of no authority for such a contention. The equitable doctrine that as between creditors equality is equity admits, so far as we know, of no exception founded on the greater supposed sacredness of one debt, or that it arose out of a violation of

duty, or that its loss involves greater apparent hardship in one case than another, unless it appears in addition that there is some specific recognized equity founded on some agreement, or the relation of the debt to the assigned property, which entitles the claimant, according to equitable principles, to preferential payment."

Whether the transaction between the defendant and the receiver of February 9, 1883, was a settlement between the parties was not a question for the jury. The receiver testified that when he received the $79.31 from the defendant he was ignorant of the transaction out of which this action arose, and there is no evidence or circumstance in the case from which it could have been inferred that his testimony was untrue. There being no dispute about the facts, the question was not one of fact for the jury, but one of law for the court; and it was correctly held that the transaction did not amount to a settlement of the accounts between the defendant and the bank, and to a release of the defendant from liability to account for the unlawful preference received by it.

The judgment should be affirmed, with costs.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.

Judgment affirmed.