CASE 29—PETITION EQUITY—OCTOBER 12.

# Stephens v. Stephens' Adm'r.
# Stephens v. Blackburn's Trustee.

APPEALS FROM KENTON CHANCERY COURT.

TRUSTS.—Where a trust fund consisted of a note executed by the trustee and another to the testator who created the trust, the trustee had no power to release his co-obligor from liability on the note in consideration of the latter's conveyance to him of a tract of land in his indi-

186          KENTUCKY  REPORTS.          [Vol. 89.

Stephens v. Stephens' Adm'r.   Stephens v. Blackburn's Trustee.

vidual name, and the release by the co-obligor of his interest in
certain notes which they held jointly, his co-obligor being familiar
with the terms and nature of the trust, by which the trustee was
forbidden to change the investment and security of the fund. But
the land or its proceeds should be treated as held in trust for the
beneficiaries of the note, or for the trustee's co-obligor, who is still
liable on the note; for while the land has been sold, the title to it
was still in the trustee when he was adjudged of unsound mind, and
it or its proceeds came to his committee as a part of his estate; but
this equitable rule cannot be applied to the notes received by the
trustee, as they were collected or disposed of by him before he became
of unsound mind, and the proceeds have lost their identity.

O'HARA & BRYAN for appellants.

1. The devise of the note itself to N. B. Stephens as trustee vested the
   title thereof in him, and as to him canceled that obligation to pay the
   money, and put the liability to pay the same upon him as trustee
   solely.   (2 Redfield on Wills, subsec. 2 of sec. 10, chap. 1.)
2. One cannot at the same time claim under and against a will.  If one
   takes under a will that which is for his benefit, he must also abide
   that which is against his interest.
3. Appellant having paid to the trustee, the legal title-holder of the note,
   before its maturity, the one-half thereof for which he was only bound
   at the execution of the paper as between himself and the said trustee,
   and stipulated for his discharge from the whole note, he is thereby
   wholly exonerated from future liability thereon, and although the
   payment was not in money, it was a valid and legal payment.
   (Harlan v. Wingate, 2 J. J. M., 140; Fenwick v. Phillips, 3 Met.,
   83; Arnold v. Park, 8 Bush, 6.)
4. The title to the two notes vested in the trustee, and it was in his dis-
   cretion to collect the money and reinvest it in such manner as to
   make it productive.
5. Declarations of the testator were not competent to show his intention.
6. In case it is adjudged that appellant is liable for any part of said note,
   the land conveyed to his brother should be treated as held by N. B.
   Stephens in trust for the beneficiary of said note, and the proceeds of
   the notes held by him as executor, and out of which the balance of
   said note was to be paid, should be treated as a trust fund in his
   hands, and a lien be declared to exist on his estate superior to the
   claims of common creditors for the payment of the said balance
   derived from said notes.
7. This is a proper case for the application of sec. 33, art. 2, chapter 39,
   Gen. Stats.  The real estate in this case, so far as necessary to be
   applied to the payment of debts, should be treated in all respects as
   personalty.  (Muldoon v. Crawford, 14 Bush, 128.)

·CLEARY AND HAMILTON FOR R. O. HUGHES, TRUSTEE, &c.

1. The court erred in refusing to give the debt of the trustee a preference in the distribution of the estate of N. B. Stephens.

2. N. B. Stephens, as trustee for Mrs. Blackburn and her children, was in no way authorized to change the securities, or to do any act which would diminish the same. He could not reinvest except by the direction and approval of a court of chancery. He had no power, therefore, to release the appellant, his co-obligor, from the whole obligation by taking a deed to property to himself in his own name.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

February 25, 1867, N. B. Stephens and his brother, the appellant, L. B. Stephens, executed an obligation, acknowledging an indebtedness by them to their father, Leonard Stephens, in consideration' of land conveyed by him to them, of fourteen thousand six hundred and forty-seven dollars and sixty-nine cents, and by his direction binding themselves, jointly and severally, to pay the interest thereon semi-annually to his granddaughter, Mary L. Blackburn, during her life, and thereafter to her children during their minority, each of them to receive his or her proportion of the principal upon arriving at age; and in the event the granddaughter died without surviving children, then to pay it and any unpaid interest to their father's heirs, as if he had died intestate.

He retained the obligation until his death, which took place in March, 1873. While he held it he collected the semi-annual payments of interest, but paid them over to the granddaughter.

He also, in a letter to her, dated January 30, 1868, stated, in substance, that he held it in trust for her, and suggested that she retain the letter as evidence of it.

His will, executed on December 30, 1871, recites the holding of the obligation by him for her and her children, and provides that it is to be for her separate use, "but the same shall pass to and be held by my son, N. B. Stephens, as trustee for her, who shall manage the same, and pay over to her semi-annually the interest and profits thereof, only the principal to be retained undiminished, and to descend to her children after her death, and I forbid any other use or appropriation of said funds in any way whatsoever."

The two sons were appointed his executors, and qualified as such, N. B. Stephens, however, taking charge of the estate and becoming the active executor. He also, as trustee, but without giving any bond, inasmuch as the will provided that it should not be required, took control of the note upon himself and the appellant.

March 1, 1874, the appellant paid to him one-half of the note, and it was thus indorsed by him:

"L. B. Stephens has this day paid me, as trustee of J. M. and M. L. Blackburn, seven thousand three hundred and twenty-three dollars and eighty-four cents, which is the one-half thereof, and all interest which had accrued to this date; and the note, so far as he is concerned, is canceled, March 1, 1874.

"N. B. STEPHENS,
"*Trustee of J. M. and M. L. Blackburn.*"

This payment was made by the conveyance of about sixty-eight acres of land at the price of four thousand one hundred and twenty-six dollars and eighty-seven cents to N. B. Stephens, in his individual name, by the appellant, and the release by him to N. B. Stephens of

his one-half interest in certain land notes devised to them jointly by their father. It does not appear whether N. B. Stephens had then collected them, and was merely allowed by the appellant to retain his one-half of the proceeds, or whether the active executor subsequently collected them. It is reasonably certain, however, from this record, that the money had come to N. B. Stephens' hands before he was adjudged an imbecile on May 16, 1882.

This action was brought by his committee to settle his estate, which is insolvent. By proper cross-pleadings, the appellant and the present trustee of the Blackburns have presented the questions, first, whether the payment by the appellant to N. B. Stephens of one-half of the note in the manner recited released him from further liability upon it; and second, if not, whether, to the extent of the payment, he is a preferred creditor of N. B. Stephens' estate, which is now represented in this action by his administrator, he having died pending the litigation, and whether the Blackburns and their trustee should be secured in the payment of the trust fund, dollar for dollar, out of N. B. Stephens' estate to the extent of the payment to him by L. B. Stephens before the general creditors can receive anything.

It is urged upon the part of the appellant that, by the will of Leonard Stephens, the title to the note passed to the trustee; that he had unlimited control over the fund represented by it, and that, therefore, the release upon it of the appellant from further liability was valid, and is effective for the intended purpose.

We do not think, however, they had a right to thus traffic with each other. Both were bound for the full amount of the note. It, save the interest, was, by its terms, not payable during the life of Mary L. Blackburn. The trustee had no right to diminish the security for its payment. Moreover, the will not only did not authorize him, of his own will and in his own discretion, to change the investment and security of the fund, but it in substance, if not expressly, forbade it.

Whether this could have been done by him with the concurrence of a court of chancery is a question not now presented.

To permit the trustee to deal, as was done in this instance, with one who was familiar with the terms and nature of the trust, to their own profit and advantage, and then hold that it operated to release the latter from his liability for the trust fund, would open a door through which wrong and injustice could walk with impunity.

We fail to see, however, why the sixty-eight acre tract of land, or its proceeds, less the small portion thereof sold by N. B. Stephens to J. T. Richardson, should not be treated as held in trust for the beneficiaries of the note or for the appellant, who is still liable for it. As the payment to N. B. Stephens and release by him to the appellant were not valid, certainly as between them the latter would have been entitled to a reconveyance of his land. There was no consideration for its transfer. Equity would have treated N. B. Stephens as holding it in trust for the appellant.

Its identity had not been lost when N. B. Stephens

was adjudged of unsound mind. It is averred in the answer of the appellant, and not denied, that the title to it was then in N. B. Stephens, save as to the small portion sold Richardson; and while it does not expressly appear from this record that it was sold by his committee, yet, from what does appear, we so infer. In any event, it was not disposed of by N. B. Stephens. It came, therefore, to his committee as a part of his estate. In such a case, if the property yet exists in kind, his estate should not be allowed to hold it, and if the representative of the estate has received the proceeds of it, they should not be retained by him, but must be regarded in equity as in lien for the payment *pro tanto* of the note.

The same result follows as if one, by misrepresentation, conspiracy, intimidation, surprise, or any other practice at variance with honest gain, has been induced to convey the legal title to his real estate. A court of equity will not, in such a case, or where the consideration for a conveyance, attended by circumstances like this one, fails, permit the grantee to enjoy the beneficial interest, but will regard him as a trustee, compel him to account upon equitable principles, and reconvey the property. This rule does not apply, however, to the payment by the appellant to N. B. Stephens, so far as it was made in money or by notes, which were collected by the latter and applied by him to his own use, or disposed of by him before he was adjudged of unsound mind.

The equitable rule we have been considering can not well be applied to money in such a case. It loses its

ear-marks, and equity can do no better in such a case than treat the payor as a creditor of the payee.

The 33d section of article 2, chapter 39, of the General Statutes, providing for the payment in full, out of the estate of an insolvent decedent, of funds held by him of a dead person, ward, or one of unsound mind, has no application to this case. The fund in contest is going to parties who do not fall within the description of those named in the statute, and the relief now granted rests upon the general rules of equity.

The judgment does not determine the right of the appellant to be treated as a preferred creditor of N. B. Stephens' estate as to one-half of the J. C. Thomas one thousand and sixty dollar note, due July 27, 1882. We will not, therefore, consider this question. Indeed, the judgment does not, in express words, say that the appellant is, to no extent, to be regarded as such a creditor by reason of the payment to his brother of one-half of the trust note. Such relief was asked, however, both by him and the trustee of the Blackburns. It is expressly refused *in toto* as to the latter, and we regard the judgment as, in substance, holding that neither the trustee nor the appellant is entitled to any relief on this account. The judgment of November 18, 1887, is, therefore, reversed to the extent indicated, and cause remanded with directions to settle the estate of N. B. Stephens in conformity to the principles of this opinion, and for any orders that may be necessary to protect the trust estate of the Blackburns in connection therewith.

The appeal from the judgment of February 13, 1888, in favor of the trustee and against the appellant for an

installment of interest due upon the fourteen thousand six hundred and forty-seven dollars and sixty-nine cents note, is affirmed.