CHARLES T. CHERRY, *Receiver of the Capitol National Bank, of Guthrie, Oklahoma.* v. THE TERRITORY OF OKLAHOMA.

(Filed September 5, 1906.)

1. NATIONAL BANK—Receivership—Claims against—Priority of — How Determined. Where the secretary of the territorial board for leasing the school land of the territory without any authority deposited the money, checks and drafts received from the rents of such land in a national bank and the bank subsequently fails before the territory can be paid ahead of the other creditors of the bank it must be affirmatively prove by a preponderance of evidence that the particular moneys, checks and drafts so deposited, or the proceeds thereof were turned over to the receiver of the bank, or that such deposits went to swell the assets or such bank.

2. SAME Where a bank receives deposits while in a failing condition, and at the time it closes its doors it has on hand a sufficient amount of cash to pay such deposit, such payment will not be made ahead of others when the evidence on the particular trial affirmatively shows when measured by legal presumption, that such cash was deposited by the other creditors.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before John L. Pancoast, Trial Judge.*

*Flynn & Ames,* for plaintiff in error.

*P. C. Simons, Att'y General,* for defendant in error.

Opinion of the court by

BURWELL, J.: On March 12, 1904, Fred L. Wenner, as secretary of the territorial board for leasing school lands of the Territory of Oklahoma, deposited in the Capitol National Bank of Guthrie, O. T., $3,349.66, and on March the

31st, 1904, he deposited with the same bank the further sum of $3,017.07. All of these moneys were derived from the leasing of the school lands of the territory.

On April 4, 1904, the Capitol National Bank failed in business, and a receiver was duly appointed. He took charge of the assets, and is the plaintiff in error in this case.

The trial court found that the bank was not insolvent on March 12, 1904, and therefore denied a preference for the $3,349.66 deposited on that date; but also found that the bank was insolvent on March 31st, 1904, and awarded a preference for the $3,017.07.

We find that the trial court was justified in its findings of fact regarding these two points, but that it was unwarranted in law in allowing a preference for any sum whatever.

Of the $3,017.07 deposited on March 31, 1904, only $43.50 was actual cash, and the balance, $2,971.77 was made up of checks, drafts, etc. There is absolutely no evidence tending to show that these checks and drafts, or the proceeds therefrom ever went into the hands of the receiver. The trial court appears to have treated all of this deposit as cash, as it styles the checks and drafts as "cash items." The law did not warrant it in so doing. *Weinberger v. Willoughby* (Okla.) 70 Pac. 778. It is just as necessary to trace the proceeds of a check or draft, as it is to trace the proceeds of a promissory note or of any other species of personal property. It is the well-settled law that one must trace his identical property, or the proceeds thereof, or he cannot be given a preference. In a case like the one at bar a depositor is given a preference only upon the theory that his property having been received

by the bank in fraud, and he having been deceived, the law gives back the identical property if it can be found; and if it has been converted into some other property or money, that other property or money must stand in lieu of the property fraudulently received by the bank.

The claimant must, however, trace the fund by evidence that is clear and satisfactory, where the rights of other creditors are affected. We will here notice a few of the authorities bearing upon this point. In the case of *In re Petition of Varin et al. v. Gleason, Assignee,* 11 N. E. 504, the court of appeals of New York, speaking through Andrews, J., said:

"Where a trust fund of $3,000.00 has been dissipated or lost by the act of the trustee, and the latter subsequently makes a general assignment for the benefit of creditors, the *cestui que trust* is not entitled to a preferential claim to the assets in the hands of the assignee over general creditors, unless it is shown that trust property specifically belonging to the trust is included in the assets, either in its original or in some traceable form."

The supreme court of Massachusetts in the case of *Little et al. v. Chadwick, et al,* 23 N. E. 1005, said:

"When trust money becomes so mixed up with the trustee's individual funds that it is impossible to trace and identify it as entering into some specific property, the trust ceases. The court will go as far as it can in thus tracing and following trust money but when, as a matter of fact, it cannot be traced, the equitable right of the *cestui que trust* to follow it fails. Under such circumstances, if the trustee has become bankrupt, the court cannot say that the trust money, is to be found somewhere in the general estate of the trustee that still remains. He may have lost it with property of his own. And in such case, the *cestui que trust* can only come in and share with the general creditors. *The Attorney General v. Brigham,*

142 Mass. 248, 7 N. E. Rep. 851; *Howard v. Fay,* 138 Mass. 104; *While v. Chapin,* 134 Mass. 230; *Bresnihan v. Sheehan,* 125 Mass. 11; *Harlow v. Dehon,* 111 Mass. 195, 198, 199; *Andrews v. Bank,* 3 Allen, 313; *LeBreton v. Pierce,* 2 Allen, 13; *Johnson v. Ames,* 11 Pick. 173, 181, 182; *Trecothink v. Austin,* 4 Mason, 16, 29; *Ferris v. Van Vechten,* 73 N. Y. 113; *Frith v. Cartland,* 2 Hen. & M. 417; *Holland v. Holland* L. R. 4 Ch. 449; *Isaacson v. Harwood,* L. R. 3 Ch. 225; Perry Trusts sec. 345, 836, 842; Story, Eq. Jur. sec. 1258, 1259; Lewin, Trusts, (8th Ed.) 241, 857, 892. There is nothing to the contrary in *Bank v. Insurance Company,* 104 U. S. 54, 66-71, and *In re Hallett's Estate,* 13 Ch. Div. 696, 708-721, which are chiefly relied on by the annuitants. In Wisconsin a majority of the court has declared that it is not necessary to trace the trust fund into any specific property in order to enforce the trust, and that, if it can be traced into the estate of the defaulting agent or trustee, this is sufficient. *McLeod v. Evans,* 66 Wis. 401, 409, 28 N. W. Rep. 173, 214. But this seems to us to be stated too broadly."

The language used by the supreme court of Kansas in the case of *Burrows v. Johntz,* 48 Pac. 27, applies with great force in the case at bar:

"The parties failed not only to show the exact time when the estate went into the hands of the assignee, but they also failed to definitely show or agree that either the identical money which was delivered by Mather to Lebold, Fisher & Co., or any property into which it has been converted, actually went into the hands of the assignee. It is impossible to say, from the record, with certainty, that the assignee ever got these funds in any form. A trust is not imposed on the assignee unless the funds actually came into his hands in their original form, or commingled with the estate, or had been used by the assignor, to swell and increase the estate which passed by the deed of assignment. *Meyers v. Board,* 51 Kan. 87, 32 Pac. 658; *Hubbard v. Irrigation Company,*

53 Kan. 637, 36 Pac. 1053, and 37 Pac. 625. This case, unlike any other that has been considered by this court, rests on the bare presumption that the money came into the hands of the assignee because it had been received by the assignor a short time before the assignment, and had never been repaid to the plaintiff."

Chief Justice Doster of the supreme court of Kansas, in the case of *Travelers Ins. Co. v. Caldwell*, 52 Pac. 440, said:

"To render an assignee liable to account to a party who had placed money in the hands of his assignor as a trust fund, it must appear either that the fund actually passed into the hands of the assignee, or that property into which it can be traced passed to his hands, or, if so commingled with the general assets of the assignor as to be incapable of identification or tracing, that the estate which did pass to the assignee was augmented or bettered thereby; and the use of the trust money by the assignor in the payment of his debts, and to defray the current expenses of his business, cannot be held an augmentation or betterment of his estate, when all the assets passing to the assignee existed as the property of the assignor prior to the receipt of the trust money by him."

In *Atkinson v. Rochester Printing Co.* (N. Y. Ct. of App.) 21 N. E. 178, the rule is thus stated:

"The fact that the bank had no right to receive defendant's deposits when known to be insolvent, and committed a fraud by so doing, thus becoming a trustee *ex maleficio*, gave defendant no right to a preference over other creditors, unless it could trace and recover its own property."

The same court again, in the case of *Holmes v. Gilman, et al.* (Ct. App. N. Y.) 34 N. E. 205, states the rule thus:

"The claim of the plaintiff to recover the moneys arising from the payments of these policies is based upon the principle which allows a *cestui que trust* to follow trust funds

and to appropriate to himself the property into which such funds have been changed, together with the increased value of such property, provided the trust fund can be clearly ascertained, traced and identified, and provided the rights of *bona fide* purchasers for value without notice do not intervene. The right has its basis in the right of property, and the court proceeds on the principle that the title has not been affected by the change made of the trust funds, and the *cestui que trust* has his option to claim the property and its increased value as representing his original fund. The right to follow and appropriate ceases only when the means of ascertainment fail."

The same question was decided by the supreme court of Washington in the case of *Blake v. State Sav. Bank, et al,* 41 Pac. 909, in the following language:

"When appellants' deposits became commingled with the general funds of like character in the bank, the means of identification failed, and the money could not be reclaimed. See Story Eq. Jur. sec. 1259; *Wilson v. Coburn,* (Neb.) 53 N. W. 466; *In re North River Bank,* (Sup.) 14 N. Y. Supp. 261; *City of Summerville v. Beal,* 49 Fed. 790. If it had been delivered to the bank, not as a general deposit, but for a particular purpose, it would have been a trust fund in the first instance, and the title would not have passed to the bank, but even then it could not have been recovered without showing that it had gone into the hands of the receiver."

The supreme court of Illinois has had occasion to consider this same question in a number of cases. We will here quote from a few of them. In *Union Nat'l Bank of Chicago v. Goetz,* 27 N. E. 907, the supreme court of Illinois quotes from the case of *Thompson's Appeal,* 22 Pac. St. 16, as follows:

"Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced

it will be held in its new form liable to the rights of the *cestui que trust.* No change of its state and form can divest it of such trust. So long as it can be identified, either as the original property of the *cestui que trust* or as the product of it, equity will follow it; and the right of reclamation attaches to it until detached by the superior equity of a *bona fide* purchaser for a valuable consideration without notice, The substitute for the original thing follows the nature of the thing itself, so long as it can be ascertained to be such; but the right of pursuing it fails when the means of ascertainment fail. This is always the case when the subject matter is turned into money, and mixed and confounded in a general mass of property of the same description. This mixture has taken place in the case under consideration. It is impossible for a chancellor to lay his hand upon a single article of property, or on a single dollar of money included in the assignment, and say that any particular thing or sum of money is either the original property of Seth Mathews' heirs or the product of it. The decree was therefore erroneous. To the same effect is *Gooell v. Buck,* 67 Me. 514; *Steamboat Company v. Locke,* 73 Me. 370; *U. S. v. Inhabitants of Waterborough,* 2 Ware 158; *Englar v. Offut,* 16 Atl. Rep. 497 (Ct. App. Md. Jan. 9, 1899); *Johnson v. Ames,* 11 Pick. 172. Many other like cases might be cited, but enough has been shown to clearly indicate the line of decisions holding the doctrine that trust funds can only be pursued when they can be clearly distinguished from other property held by the trust or by those representing him, and that this court is fully committed to that rule."

*Wetherell v. O'Brien,* (Ill.) 29 N. E. 904:

"Where a trustee has converted a trust fund into money, and mingled it with his other moneys so that it cannot be separated from the latter, the beneficial owner occupies the position of a general creditor of the estate, and cannot follow the fund into the hands of an assignee for the benefit of creditors. *Bank v. Smith,* 21 Blatchf. 275, 15 Fed. Rep.

858, and cases there cited. Its identification. is a prerequisite
to the exercise of the right to follow it. 2 Story Eq. sec.
1251. While it may not be necessary to point to the parti-
cular pieces of money or the particular bank bills that were
deposited with the trustee, if the trust property be money,
yet there must be preservation of the distinctness of the trust
funds."

To the same effect are *Mutual Acc. Ass'n of the North-
west v. Jacobs, et al.* (Ill.) 31 N. E. 414, and *Bayor v. Amer-
ican Trust Company,* (Ill.) 41 N. E. 622. In this connection
we desire to state that these cases adhere to a more strict
rule than we care to adopt. If the claimant can trace his
money into the general mass turned over to the receiver, it
is sufficient. This, however, has not been done in this case.
The evidence wholly fails to show that any of the money or
checks or drafts deposited with the bank or any proceeds
therefrom ever reached the receiver. Unless the plaintiff can
do this by a clear preponderance of the evidence, it must fail.
The rule here adopted has been followed by the great ma-
jority of the courts that have passed upon the question.
*Fletcher et al, v. Shapp et al.* (Ind.) 9 N. E. 142, *Stephens
v. Stephens, Admr.* (Ky.) 12 S. W. 192, *Burnham v. Barth,*
(Wis.) 62 N. W. 96, *Gianella v. Momsen,* (Wis.) 63. N. W.
1018, *Henika v. Heinamann,* (Wis.) 63 N. W. 1047, *Henry
v. Martin,* (Wis.) 60 N. W. 263, *Cherry v. The Territory,* de-
cided at this term of court. Nor does the fact that the funds
were deposited without the consent of the territory change
the rule. It is true that some of the authorities hold that
where public funds are deposited in a bank without author-
ity and the bank fails, the public will be entitled to a pref-
erence ahead of the general creditors,. but the great weight
of the cases is the other way. Where property has been

wrongfully converted the law implies an obligation to pay the full value of the same, but it does not imply that such payment shall be made in full ahead of the general creditors.

One of the best considered cases upon this point is *State . v. Foster,* (Wyo.) decided in January, 1895, in which the opinion was written by Chief Justice Groesbeck, 29 L. R. A. 226. The court said:

"In following trust funds, they must first be traced to the estate of the trustee or quasi-trustee, and the *corpus* of the fund must be found. It must be *in esse* in some form, or it cannot be identified. Where the trust moneys are mingled with those of the trustee, the trust must be impressed upon such funds or property with which it is mingled; but, if it appears that the trust moneys are dissipated or lost, there is no fund to impress with the trust, and the sole remedy of the beneficiary is a proceeding against the trustee, personally. Where he is solvent, this is the usual remedy pursued, as by judgment and execution the whole estate can be impressed with the amount of the judgment. Some of the court have held, as the "modern" equity doctrine, that all that is necessary is to trace the trust moneys into the estate of the trustee, which then becomes impressed with the trust. This was the rule established by a number of cases in the supreme court of Wisconsin until a return of a general rule was announced in *Nonotuck Silk Co. v. Flanders,* 97 Wis. 237, and the former cases were overruled. The leading cases on the subject are those of *Re Cavin's petition v. Gleason,* 105 N. Y. 156, 262; *Little v. Chadwick,* 151 Mass. 109, 7 L. R. A. 570, and *Slater v. Oriental Mills,* 18 R. L.

"That the money constituting the trust may have been wrongfully converted by the defaulting or delinquent trustee does not seem to alter the situation, as some of the courts hold. There is no peculiar sanctity that surrounds an action *ex delicto,* as distinguished from an action *ex contractu,* at law, so far as the obtaining satisfaction of any judgment is

concerned; and when equity is invoked in the former cases, equitable rules must be applied. Where no specific lien is created by contract, or the acts of the parties, none exists. The only course open is in equity, to discover the *corpus* of a trust fund or to follow the changes and transmutations of the trust moneys into some particular property that can be charged with the trust, saving the rights of innocent purchasers for value."

With these views we fully concur; and we are not willing under the circumstances of this case to adopt a rule that will give to the territory greater rights than an individual similarly situated would have.

The plaintiff, having failed to trace its cash or checks, or drafts or proceeds thereof into the hands of the receiver, a preference will be denied. Both claims should stand on an equality with the general creditors. From the evidence it is clear when measured by the legal presumptions, that none of the cash on hand at the time of the failure was the money deposited by Wenner. From the evidence it appears that other persons deposited in the Capitol National Bank in cash something over $33,277.00 after the day that Wenner made his last deposit. There were some $20,000.00 only in cash on hand when the bank failed. The law presumes that the last money deposited in a bank in circumstances of this kind, was the last money paid out. *Cherry v. The Territory,* reported just preceding the opinion. As the total amount of actual cash deposited after March 31st, 1904, was greatly in excess of the cash on hand, the presumption is that the money of the territory deposited on and prior to March 31st, 1904, had been paid out in the ordinary course of business.

For the reasons stated the judgment of the court below, is hereby reversed at the cost of the appellee, and the case

is remanded with directions to enter judgment in conformity hrewith.

Pancoast, J., who presided in the court below, not sitting; Burford, C. J., who is personally interested in the result of the action, not sitting; all of the other Justices concurring.